217 N.J. Super. 202 (1986)
524 A.2d 1359
GEORGE AND LUCY CHAMBERS, PLAINTIFFS,
v.
JOSE AND MARIA NUNEZ, DEFENDANTS.
Superior Court of New Jersey, Law Division Special Civil Part, Essex County.
Decided November 19, 1986.
*204 Michael F. Martino, for plaintiffs (Martino, Mosolino & Deutsch, attorneys)
Terence Farrell for defendants (Community Health Law Project, attorneys.)
FAST, J.S.C.
This is an action for the summary dispossession of a tenant from an apartment at 215 Forest Street, Belleville, New Jersey. The building is currently occupied by the plaintiffs-landlords on the first floor, with the defendants-tenants on the third floor.
The landlords served the defendants with a one month notice to quit and demand for possession. The notice said, along with the usual provisions, that it was being served pursuant to N.J.S.A. 2A:18-51, 2A:18-56, and 2A:18-61.1. The tenants did not move out, and the landlords brought this summary action for possession.
The dispute in this action centers on the use of the second floor. For some period prior to June 1986, there were two tenants on the second floor. Although the record is not clear how long the second floor had been occupied by two tenants, it appears that two tenants occupied that floor in separate units, each having an independent access, and each paying rent independently of the other, from 1978 until June 1986. It was stipulated that there were two tenants on the second floor as of June 1986, and that there was only one tenant on that floor as of the date of service of the subject notice on the defendant, the third floor tenant. Each of the second floor units had its own access, kitchen, bath facilities, etc, making two separate and distinct rental units. After the first of these last two second floor tenants moved out (apparently voluntarily), the landlords converted the building by restoring the second floor to one unit *205 by removing a sheetrock partition and replacing it with a door. It appears that the sheetrock had been put in where there was formerly a doorway between the two second floor apartments, and that was the sheetrock that had been removed and replaced with a door, bringing it back to its original condition. The remaining second floor tenant testified that she planned to marry and to use the entire expanded second floor as a single apartment for her own use.
The plaintiffs-landlords argue that the facts extant at the time of the service of the notice are controlling. The defendants-tenants argue that the conversion of the two units into one was a violation of the defendants' rights to live in a four unit building to which accrues the benefits of the "eviction for cause" statutes. The defendants-tenants have lived in their apartment since 1972, that is, for 14 years.
A letter from the Belleville Construction Code Official's office was put into evidence. It stated that the tax assessor's office "has this house listed as a three family home." There was no testimony to state how the assessor's office came to that listing, although a "Registration Statement" filed by the Plaintiffs in November 1984 and November 1985 were marked into evidence. The 1984 statement showed that the first floor was owner occupied, the second floor had a rental income of $275.00, and the third floor had a rental income of $255.00. The 1985 statement included the following:
 "Number of Apartments in Building 3 × $1.00 per unit =
 $3.00."
That was for the calculation of the registration fee, and appears to be in contrast to the testimony which showed four units for those periods. The 1985 form again represented that the first floor was owner occupied, the second floor had a rental income of $290.00, and the third floor had a rental income of $268.00. Those representations also were contradicted by the testimony which clearly showed a greater rental income for those years for the second floor. At best, those forms are self serving, and *206 I have not given them any weight to prove that there were only three units in the building. There was no testimony as to any limitation on the number of families according to the municipal zoning ordinance.
N.J.S.A. 2A:18-61.1 became effective on June 25, 1974 and has been effective since then (with amendments not material to this decision).
The issue actually presented is the definition of "residential unit" as used in N.J.S.A. 2A:18-61.1 and whether it applies to these defendants. The issue appears not to have been resolved in any reported New Jersey case where a residential building was at one time a three unit building, later converted to four units, and then again restored to three residential units with the owner occupying the building with two rent paying tenants.
A summary action for possession is based upon statutory authority only; it is not a common law remedy. The statutory bases could be under either N.J.S.A. 2A:18-53 or 2A:18-61.1. The landlord [or their attorney] recognized this in preparing the notice, and attempted to cover "all bases." Because plaintiffs seek statutory relief, they must comply strictly with the statutory requirements. Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 123-124 (1967).
N.J.S.A. 2A:18-53 refers to N.J.S.A. 2A:18-61.1 and states that summary dispossess actions against residential tenants may be had under it only where N.J.S.A. 2A:18-61.1 does not control. N.J.S.A. 2A:18-61.1 refers to "owner-occupied premises with not more than two rental units...." The significant difference is that a tenant who is protected by N.J.S.A. 2A:18-61.1 has greater safeguards than one controlled by N.J.S.A. 2A:18-53.
There were four rental units in the subject building as recently as 1986. I therefore hold that the landlords' actions are governed by the law as it existed since it became effective, and as it was at the time of trial, and not as of 1972, when the *207 defendants moved in. The general proposition of law is that a statute speaks as of the time that it goes into effect. Gianforte v. Crucible Steel Co. of America, 25 N.J. Super. 183, 188 (Hudson C.C., 1953) citing Conklin v. Ronnie, 125 N.J.L. 208 (Sup.Ct., 1940). Because the tenants have resided in this apartment since June 25, 1974 (when the "removal for cause" statute became effective), they "cannot reasonably be expected to appreciate the fact that [they] could be dispossessed" if another unit became vacant, and was then converted. The quoted language comes from Cruz v. Reatique, 212 N.J. Super. 195 Superior Court of New Jersey, Law Division, Special Civil Part, Passaic County, Decided June 27, 1986, approved for publication August 11, 1986. Although that case related to a tenant who later became a superintendent and was thereafter fired, the quoted expression itself is equally applicable to this case.
With reference to the current law, the perspective is on the structure, not the nature or actual number of the occupants. There were two separate rental units on the second floor, and one each on the first and third floors. Based on the testimony, I find that the landlords converted the building in a way not contemplated by N.J.S.A. 2A:18-61.1, attempting to remove a residential unit from the rental market and thereby increasing their control over the building by removing it from the requirements of N.J.S.A. 2A:18-61, and in an attempt to derogate the rights of the two remaining rent paying tenants. Each of these units was divisible; each was a separate "rental unit." The fact that the units are not now separate should not penalize the defendants/tenants if the landlord did not legally alter them. Because it was a four unit residential building, the landlord must satisfy the requirements of N.J.S.A. 2A:18-61.1, rather than 2A:18-53. The result would be the same if the landlord had a four unit residential building and moved his family into two of the units; although it would be owner-occupied with no more than two rent paying tenants, it would still be a four unit residential building. This is effectively the same.
*208 This result would seem to have been presaged by the case of G.D. Management Co. v. Negri, 182 N.J.Super 409, 412 (App. Div., 1982) where it was said:
If emphasis is placed on the definitional standard of a building rented to three or more family units, then, as condominium units become owner occupied, the last two tenants remaining would suddenly have lost their pre-existing protection.
Likewise, if a four unit owner-occupied residential building had a vacancy and the owner converted the vacant unit, then the last tenant would lose its pre-existing protection. I find that that was not the contemplation of the Legislature; it certainly was not within the language of the Legislature. A landlord cannot convert a building from four units to three units in an effort to avoid the requirements of N.J.S.A. 2A:18-61.1 in derogation of a tenant's statutory rights. Accordingly, the complaint seeking possession based on the subject notice is dismissed.