VINCENT SURACE AND JOAN SURACE, PLAINTIFFS, v. CLARA PAPPACHRISTOU, DEFENDANT.

Superior Court of New Jersey
Law Division Bergen County

Decided July 3, 1989.

---

[6]Had defendant pursued its counterclaim with appropriate proofs, it might have been entitled to recover the excess payments made, if any, toward the addendum.

*Stephen F. Pellino,* for plaintiffs *(Basile, Birchwale & Pellino,* attorneys).

*James Tarella,* for defendant *(Tarella & Liftman,* attorneys).

HARRIS, J.S.C.

## Introduction.

This summary dispossess action pits a 13–year tenant in an owner-occupied, multi-family dwelling against her landlord who seeks a judgment of possession to enable the landlord to personally occupy her apartment.

Plaintiff claims that defendant is not protected by the provisions of the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1 *et seq.* Rather, plaintiff claims entitlement to a judgment of possession under the all-encompassing summary dispossess statute, *N.J.S.A.* 2A:18–53(a). In reliance upon this statutory provision,

plaintiff did not comply with the notice provisions of *N.J.S.A.* 2A:18–61.2. He concedes that if the Anti–Eviction Act applies to this tenancy, the court is without jurisdiction, and the complaint must be dismissed.

## *Findings of Fact.*

Plaintiff owns property at 2191 McKay Avenue, Fort Lee, New Jersey. It is located in a residential district which permits single- and two-family dwellings. Inexplicably, when plaintiff purchased the property in 1985 it was occupied by five tenants, each in separate quarters. Two tenants occupied separate apartments in the basement and three tenants, including defendant, occupied separate apartments upstairs.

Plaintiff purchased the property from an investor who had not resided in the premises. After acquiring the property, plaintiff was able to oust[1] three of the tenants; plaintiff's family is now occupying the entire basement and one of the upstairs apartments. Physical modifications to the basement have been made so that it no longer is capable of being used, without further modification, as multiple-dwelling units.

Defendant appears to have been a model tenant. She has paid her rent in a timely fashion. She is not a disorderly tenant, and she has not physically damaged the premises. Plaintiff has virtually conceded that there is an absence of "cause" under the Anti–Eviction Act to remove her, except, perhaps, under *N.J.S.A.* 2A:18–61.1(*l*)(3). As such, plaintiff seeks her eviction in this action on the strength of his argument that the Anti–Eviction Act is inapplicable, and he may remove her for any reason whatsoever.

---

[1] It appears that one pair of the downstairs tenants moved out of their own accord; the other downstairs tenant moved out after receiving a moving allowance or other payment from plaintiff; and one of the upstairs tenants moved out upon receiving some other monetary consideration.

### Conclusions of Law.

The issue here is the meaning of "owner-occupied premises with not more than two rental units [2]." *N.J.S.A.* 2A:18–61.1. If the instant property may be so characterized, plaintiff will obtain its goal of a judgment of possession. If not, defendant shall be victorious and the complaint will be dismissed.

In *Bradley v. Rapp,* 132 *N.J.Super.* 429 (App.Div.1975), certif. den. 68 *N.J.* 149 (1975), the Appellate Division—in one of the earliest appellate decisions construing the Anti–Eviction Act—determined that one who purchases a *two-family property* for the express purpose of immediately residing therein renders the premises "owner-occupied" within the meaning and intendment of that phrase as used in *N.J.S.A.* 2A:18–61.1.

The language of *Bradley, supra,* strongly suggests that the Appellate Division was struggling with the anomaly (since corrected by *N.J.S.A.* 2A:18–61.1(*l*)(3)) that seemed to prevent an owner of a small building from recovering possession of property. However, in so struggling, the Appellate Division enunciated some appropriate warnings regarding statutory interpretation, especially with reference to the Anti–Eviction Act:

In our review of the statute we are compelled to give primary regard to the fundamental purpose for which it was enacted. At the same time we should strive to avoid an anomalous, unreasonable, inconceivable, or absurd result. *N.J. Builders v. Blair,* 60 *N.J.* 330, 338 (1972); *Union County Bd. of Freeholders v. Union County Park Comm'n.,* 41 *N.J.* 333, 341 (1964); *Robson v. Rodriquez,* 26 *N.J.* 517, 528 (1958); *Sandler v. Springfield Tp. Bd. of Adjustment,* 113 *N.J.Super.* 333, 345 (App.Div.1971).

. . . .

We have considered the underlying background and objectives of this legislation and are satisfied that our construction should be governed by the 'common sense of the situation,' *Jersey City Chap. Prop. Owners v. City Council,* 55 *N.J.* 86, 100 (1969), rather than 'scholastic strictness.' Using this yardstick, 'it

---

[2]This language is identical to the Anti–Eviction Act's companion legislation, The Rent Security Deposit Act, *N.J.S.A.* 46:8–19 *et seq. See N.J.S.A.* 46:8–26. Unfortunately, an analysis of the companion legislation and its legislative history does not illuminate the issues here.

is not the words but the internal sense of the act that controls.' *San–Lan Builders, Inc. v. Baxendale,* 28 *N.J.* 148, 155 (1958). [*Id.* at 433]

It appears that the phrase "owner-occupied premises with not more than two rental units," has been taken for granted since the inception of the Anti–Eviction Act and has not been the subject of close scrutiny [3]. A number of cases have danced around its meaning, but none appear to have *directly* confronted the intent of the Legislature by the use of those words. Some argue that owner-occupied premises with not more than two rental units means either a conventional two-family or three-family dwelling. If that is correct, and if the property in the instant case is deemed a three-family dwelling as a result of the combination of the basement and part of the upper floor, defendant is not entitled to the protection of the Anti–Eviction Act.

Guidance on this issue is sparse and generally off target. For example, in *Kabakian v. Kobert,* 188 *N.J.Super.* 517 (App. Div.1983) (a summary dispossess action against a tenant of a *single*-residential unit in a 194 unit condominium regime) the Appellate Division stated the following *dicta:*

> Excepted from § 61.1 protection are tenants of 'owner-occupied premises with not more than two rental units.' That exception has been interpreted to include a building of three or fewer residential units, one of which the owner seeks to occupy personally. *Bradley v. Rapp,* 132 *N.J.Super.* 429 (App.Div.1975, certif. den. 68 *N.J.* 149 (1975). [*Id.* at 519]

A review of *Bradley, supra,* however, reveals that its property was a:

> two-family home in a residential section, with two dwelling units. Defendants (mother and son) reside in one of the two apartments and another tenant resides in the other. [132 *N.J.Super.* at 431]

Thus, *Kabakian* misstated the *Bradley* situation.

Another misinterpretation of *Bradley,* is mirrored in Meiser, *Tenant–Landlord Practice:*

---

[3]It is apt to recall the following: "A small child's voice could be heard clearly to say, 'But he has no clothes on!'." Anderson, *The Emperor's New Clothes* (1861).

*N.J.S.A.* 2A:18–61.1 exempts only two classes of rental residences from the eviction for good cause act: (1) owner-occupied premises with not more than two rental units, (see *Bradley v. Rapp, supra* which held that if a person purchases *a two- or three-unit dwelling* for purposes of immediately residing there, the premises becomes 'owner-occupied' within the meaning of *N.J.S.A.* 2A:18–61.(1)). [At 9; emphasis supplied]

Again, the reference to a three-unit dwelling was totally foreign to *Bradley,* and appears to be an interpretation of the *statutory language,* rather than any direct derivation or progeny from the facts of that case.

■    These interpretations, however, are not necessarily arbitrary, capricious and unreasonable. They are, however, erroneous. Perhaps when one reads the statute and observes the notation to "two rental units" it engenders the thought that since the owner does not charge itself rent, the "two rental units" must necessarily be two *other* rental units, thereby lending support to a conclusion that an owner-occupied three-family dwelling is exempt from the protection of the Anti–Eviction Act. To react this way, without more, is to ignore the substantial and cogent body of law which teaches that the *occupants* are not the important factor in determining the applicability of the Anti–Eviction Act. Rather, the focus must be on the nature of the structure and the units therein.

In *Manning v. Hancher,* 217 *N.J.Super.* 199 (Law Div.1986) Judge Fast described the property as the following:

The building is currently occupied by the landlord's family plus a rent-paying tenant on the third floor and a rent-paying tenant on part of the second floor. The remainder of the second floor, and the first floor, are occupied by landlord's family. [At 200]

Although Judge Fast was confronted with the definition of "residential unit" as used in *N.J.S.A.* 2A:18–61.1(*l* )(3), he struggled to make sense of that phrase in light of the jurisdictional reference to "rental unit" in the foreward of *N.J.S.A.* 2A:18–61.1. In analyzing the building in *Manning,* Judge Fast determined the following:

There are four *rental units* in the subject building. The perspective is the structure, not the nature of the occupants. There are two separate rental units on the second floor, and one each on the first and third floors. Based on the

testimony, I find that there are two rental units occupied by the landlord, including one of the units on the second floor. Each of these units is currently divisible; each is a separate 'rental unit.' The fact that the landlord's family occupies two rental units does not make them any the less a rental unit. [*Id.* at 201]

This type of analysis was followed by Judge Fast in a later case, *Chambers v. Nunez*, 217 *N.J.Super.* 202 (Law Div.1986), which is remarkably similar to the facts of the instant matter.

In *Couey v. Sterling*, 224 *N.J.Super.* 581 (Law Div.1988), Judge Eichen also had occasion to confront the owner-occupied issue and the interplay between "residential units" and "rental units." While Judge Eichen followed Judge Fast's concept of viewing the structure and not the nature of the occupants, *id.* at 585, she stated, in *dicta*, that "once an owner legally occupies a residential unit in a mixed use building with no more than two *other* rental units, the owner may act under *N.J.S.A.* 2A:18–53." *Id.* at 586; emphasis supplied. Judge Eichen added the word "other" where the Legislature did not insert such an adjective.

If *N.J.S.A.* 2A:18–61.1 was not meant to protect tenants in owner-occupied three-family dwellings, the Legislature surely would have inserted, as did Judge Eichen, the word "other." This court does not view its function as that of adding words to a statutory scheme that is so language dependent. The legislation is clear and unambiguous. The court is not in a position to second guess or make a better world for plaintiff than the one in which it finds itself as created by the Legislature. If remediation is necessary to relieve plaintiff of the harsh result ordered in this case, that is for another sphere of government, not the Judiciary. The statute under consideration is plain, straightforward, and serves legitimate purposes of public policy.

It is of no moment, and wholly nonpersuasive, that it appears that some courts may have considered the phrase "two rental units" as exempting a three-family dwelling (owner-occupied)

from the protection of the Anti–Eviction Act[4]. This court declines to follow such a course in view of what it considers the plain language of the statute. *Bradley, supra,* does not convince the court otherwise, and there is nothing in the legislative history of the Anti–Eviction Act or its 1975 amendments (introducing the § 61.1($l$)(3) good cause) which compel a result other than for the broadest protection to tenants, consonant with a sensitive balancing of landlords' property rights.

This court agrees that the focus and perspective must be on the structure, and not the occupants of a dwelling. Just as Judge Fast in *Manning, supra,* and *Chambers, supra,* determined the number of rental units in those cases to be four, in the instant case I determine that plaintiff's premises contain more than two rental units. As such, the Anti–Eviction Act applies and the action must be dismissed.

Because of the apparent novelty (to some) of this determination, I will, in the interest of completeness, further examine the facts of this case in light of other principles announced by Judge Fast in *Chambers, supra.* In that case the court determined that the landlord's actions of modifying and reducing the number of rental units would not disqualify pre-existing tenants from the protection of the Anti–Eviction Act. Judge Fast essentially determined that the landlord's unilateral act of reducing the number of rental units could not deprive the tenant of "vested rights" accrued under the Anti–Eviction Act. Judge Fast determined:

> Based on the testimony, I find that the landlords converted the building in a way not contemplated by *N.J.S.A.* 2A:18–61.1, attempting to remove a residential unit from the rental market and thereby increasing their control over the building by removing it from the requirements of *N.J.S.A.* 2A:18–61, and in an attempt to derogate the rights of the two remaining rent-paying tenants. [217 *N.J.Super.* at 207]

---

[4]There are no reported decisions which reflect this view. Counsel for the parties have advised the court of such treatment by other courts.

Here, defendant has been a tenant since 1976. Once the property became eligible for protection under the Anti–Eviction Act, the right to rely upon the act and to enjoy its protective mantle became vested. Plaintiff may not, without the consent of defendant, change these ground rules by physical modification of the building so as to deprive defendant of the rights which she has enjoyed for at least the last decade.

This holding does not *prevent* the landlord from modifying the building. It only serves to create two different classes of tenants: pre-conversion and post-conversion. Pre-conversion tenants are those who receive the benefits of the Anti–Eviction Act because the property was once under its protection. Post-conversion tenants are those who take possession after a property is reduced to an owner-occupied two-family dwelling. This disparate treatment and status is not unusual under the Anti–Eviction Act. For example, the act makes a clear distinction between the rights of post-conversion and pre-conversion tenants in a condominium regime. *Compare N.J.S.A.* 2A:18–61.-1(*l*)(1) and (*l*)(2).

In this case the landlord has reduced the number of rental units from five to three. Even if the court is wrong, and a three-family, owner-occupied building is not entitled to application of the Anti–Eviction Act, this defendant is no different than defendant in *Chambers, supra,* who, notwithstanding the physical modification of the building, was granted protection under that statute. The court subscribes to, and agrees with, the principles contained in *Chambers, supra,* and finds them particularly appropriate here. Plaintiff took title to the property knowing that its tenants were protected by the Anti–Eviction Act. He may not now remove their protections [5].

---

[5]This would be true even if the property started out as a conventional two-family, nonowner-occupied dwelling that the landlord (under *N.J.S.A.* 2A:18–61.1(*l*)(3)) sought to occupy for his personal use. In that circumstance and upon landlord taking occupancy of one unit, the remaining tenant would not lose its pre-existing Anti–Eviction Act protection. However, any new

### Conclusion.

Based upon the foregoing, the court concludes that, not only does defendant enjoy the protection of the Anti–Eviction Act's notice provisions, she is immune from eviction under *N.J.S.A.* 2A:18–61.1(*l*)(3). The retrofitting of the structure did not remove defendant's pre-existing protection. As such, the complaint shall be dismissed with costs taxed against plaintiff.

---

tenant who moved in without any reliance upon the condition of the premises would not be so protected.