244 N.J. Super. 70 (1990)
581 A.2d 875
VINCENT AND JOAN SURACE, PLAINTIFFS-APPELLANTS,
v.
CLARA PAPPACHRISTOU, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 18, 1990.
Decided October 15, 1990.
*71 Before Judges O'BRIEN, SCALERA and KEEFE.
Smith, Don, Alampi, Scalo, Diktas, D'Argenio & Habeeb, attorneys for appellants (Jeffrey B. Steinfeld, of counsel and on the brief).
Tarella and Liftman, attorneys for respondent (James A. Tarella, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiffs Vincent and Joan Surace appeal from a judgment dismissing their complaint for possession after the Law Division judge concluded that the subject building was governed by the "good cause" provisions of the Anti-Eviction Act (Act), N.J.S.A. 2A:18-61.1, and that the renovation of the premises subsequent to its purchase, reducing the number of rental units, did not remove the defendant tenant's preexisting protection under the Act. We affirm the judgment entered in favor of the defendant. However, for the reasons stated herein, we do not completely endorse the views expressed by the Law Division judge in his reported opinion at 236 N.J. Super. 81, 564 A.2d 134 (Law Div. 1989).
Plaintiffs purchased the property at 2191 McKay Avenue, Fort Lee, New Jersey in 1985. At that time the building *72 contained five occupied residential units  two in the basement and three on the first floor. Defendant Clara Pappachristou who had been a month to month tenant on the premises since 1976 was then, and still is, occupying one of the three units on the first floor.
The prior owner did not occupy any of the five units. According to the testimony of plaintiff Vincent Surace, one of the basement units became vacant within three months of the purchase. Plaintiffs' family moved into that unit. Subsequently, the other basement tenant moved out after receiving a moving allowance or other payment from plaintiffs. Plaintiffs removed the partition separating the two basement units and utilized the entire space for their family. The same type of scenario occurred several months thereafter with respect to the first floor tenant who occupied the three room middle unit. Plaintiffs then opened up a stairway from the basement to that unit which was then utilized by plaintiffs' family as a living room, dining room and eat-in kitchen.
Plaintiffs then decided that they wanted defendant's unit for further expansion of their family quarters and served defendant with a notice to quit.[1] When defendant failed to surrender possession of the premises this dispossess action commenced.
Plaintiffs contend that they have the right to proceed under N.J.S.A. 2A:18-53(a) on the grounds that defendant is simply a holdover tenant. Plaintiffs admit in their appellate brief that there is an absence of cause for evicting defendant under the Anti-Eviction Act but argue that they are exempt from its provisions because the Act excludes "owner-occupied premises *73 with not more than two rental units" and at the time the dispossess proceeding was filed their premises clearly met that definition.
The trial judge essentially found that the statutory words, "owner-occupied premises with not more than two rental units," exempted only a two family house where the owner occupied one of the two units but did not exempt a three residential unit building such as plaintiffs'. 236 N.J. Super. at 87-88, 564 A.2d 134. That interpretation is contrary to the plain meaning of the statute. We endorse, instead, Judge Meehan's analysis of the subject phrase as explicated by him in Sheehan v. Rocco, 243 N.J. Super. 673, 581 A.2d 134 (Law Div. 1990). He concluded, as do we, that:
Owner-occupied with no more than two rental units means that the owner-occupant must reside in one residential unit and there be not more than two residential units that are rented for a total of no more than three residential units. [at p. 678, 581 A.2d at 136].
This interpretation is not only grammatically correct but also has the salutary effect of creating harmony of treatment between owner-occupied premises on the one hand and premises containing three residential units where the purchaser wishes to occupy one of them. (Compare the first paragraph of N.J.S.A. 2A:18-61.1 with N.J.S.A. 2A:18-61.1(l)(3)).[2]Dempsey v. Mastropasqua, 242 N.J. Super. 234, 238-239, 576 A.2d 335 (App.Div. 1990); see also, Bradley v. Rapp, 132 N.J. Super. 429, 334 A.2d 61 (App.Div. 1975), certif. den. 68 N.J. 149, 343 A.2d 437 (1975); Durruthy v. Brunert, 228 N.J. Super. 199, 549 A.2d 456 (App.Div. 1988).
Thus, if the inquiry here was simply a grammatical one, we would conclude that plaintiffs' building was exempt from the Act because at the time the suit was filed plaintiffs occupied the premises and there were only two other rental units occupied by tenants. However, the Act must be interpreted with a view toward its legislative purpose  a recognition that *74 tenants are frequently unfairly and arbitrarily ousted without reasonable grounds or suitable notice and are placed at a grave disadvantage because of existing critical housing shortages. Bradley, 132 N.J. Super. at 432-33, 334 A.2d 61. The trial judge correctly noted that the inquiry must go beyond the question of the literal interpretation of the phrase in the first paragraph of the Act creating the exemption for certain owner-occupied premises. It has been recognized in other contexts that the Act created substantive rights in the tenant as well as procedural requirements for their removal. Stamboulos v. McKee, 134 N.J. Super. 567, 570, 342 A.2d 529 (App.Div. 1975), citing with approval 25 Fairmont Ave., Inc. v. Stocton, 130 N.J. Super. 276, 283, 326 A.2d 106 (Dist.Ct. 1974).
When defendant became a tenant in 1976 the premises contained five residential units. Because the Act was then in effect, she had the right to expect a continuing tenancy in those premises unless the building was completely removed from the rental market, N.J.S.A. 2A:18-61.1(h), or unless one of the other "good cause" grounds enumerated in the Act developed thereafter. Because the premises were not then owner-occupied and there were then five residential units, she did not have to concern herself with either the exemption from the Act's protection or paragraph (l)(3) of the Act which addresses the right of a non-occupying owner of a building with three residential units to occupy one of those units.
In this case, however, the landlords' family gained occupancy of one rental unit and subsequently two others. The question presented by these facts is whether the premises has lost its character as a five residential unit dwelling because of the plaintiff landlords' conduct or whether it retains those characteristics because of some vested right that defendant tenant has obtained under the Act. The answer is not readily apparent from the statutory provisions. It is doubtful that the Legislature could have foreseen this precise occurrence. Courts have, nonetheless, recognized that

*75 cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end `words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.' [Bradley v. Rapp, 132 N.J. Super. at 433 [334 A.2d 61], quoting from New Capitol Bar & Grill Corp. v. Div. of Employment Security, 25 N.J. 155, 160, 135 A.2d 465 (1957).]
Almost identical issues were presented in the cases of Manning v. Hancher, 217 N.J. Super. 199, 524 A.2d 1357 (Law Div. 1986) and Chambers v. Nunez, 217 N.J. Super. 202, 524 A.2d 1359 (Law Div. 1986). In Chambers, the building in question had three floors. Defendant had been a tenant on the third floor for 14 years. The plaintiff landlord occupied the first floor. There were two tenants occupying separate rental units on the second floor. One of the second floor tenants moved out and plaintiff converted the second floor to one rental unit by removing a partition that had separated the units. The plaintiff then served defendant with a notice to quit. When defendant did not surrender possession, a dispossess action was instituted in which plaintiff claimed exemption from the Anti-Eviction Act because, at the time the complaint was filed, the premises were owner-occupied and there were only two units rented to tenants. The defendant tenant argued that the conversion of the two units into one was a violation of the defendant's rights to live in a four unit building which receives the protection of the Anti-Eviction Act. Judge Fast wrote:
With reference to the current law, the perspective is on the structure, not the nature or actual number of the occupants. There were two separate rental units on the second floor, and one each on the first and third floors. Based on the testimony, I find that the landlords converted the building in a way not contemplated by N.J.S.A. 2A:18-61.1, attempting to remove a residential unit from the rental market and thereby increasing their control over the building by removing it from the requirements of N.J.S.A. 2A:18-61, and in an attempt to derogate the rights of the two remaining rent paying tenants. Each of these units was divisible; each was a separate `rental unit.' The fact that the units are not now separate should not penalize the defendants/tenants if the landlord did not legally alter them. Because it was a four unit residential building, the landlord must satisfy the requirements of N.J.S.A. 2A:18-61.1, rather than 2A:18-53. [217 N.J. Super. at 207, 524 A.2d 1359.]
*76 The same conclusion was reached in Manning where the landlord's family who had occupied all of the first floor of a building also occupied a rental unit on the second floor, leaving one tenant on part of the second floor and defendant Hancher who occupied the third floor apartment. The landlord attempted to terminate Hancher's lease because the landlord wanted to occupy the unit in which Hancher was residing. In that case Judge Fast concluded that "[t]he fact that the landlord's family occupies two rental units does not make them any less a rental unit. Because it is a four unit residential building, the landlord must satisfy the requirements of N.J.S.A. 2A:18-61.1, rather than 2A:18-53." 217 N.J. Super. at 201-202, 524 A.2d 1359.
We endorse Judge Fast's analysis as expressed in Manning and Chambers, as did the Law Division judge in this case, because the result, in our view, achieves the legislative goal of maximizing tenant protection. Thus, we hold that the plaintiffs, having taken title to the property knowing that the tenants were protected by the Anti-Eviction Act, cannot now remove that protection by deleting just enough units from the rental market to render the premises exempt from the "good cause" provisions of the Act.[3]
Affirmed.
NOTES
[1] Plaintiff-Vincent Surace testified that he also wanted to terminate defendant's tenancy in order to bring the building into compliance with local zoning laws which permit no more than a two family dwelling in that zone. However, the evidence revealed that the building has been carried on the municipality's records as a five unit dwelling since the early 1960's. There has never been an enforcement action, brought or threatened, by the municipality. Indeed, plaintiffs do not rely upon the provisions of N.J.S.A. 2A:18-61.1(g).
[2] We use the higher case letter "L" here rather than the correct lower case letter because of the similarity between the lower case letter and the number one.
[3] This opinion is not intended to restrict the right of State or local authorities from taking any action permitted by law concerning these or similar premises as contemplated by N.J.S.A. 2A:18-61.1(g) or limit the rights of landlords to act in such instances. See supra footnote 1.