982 A.2d 1185 (2009)
410 N.J. Super. 437
Gloria OSORIA, Plaintiff-Appellant,
v.
WEST NEW YORK RENT CONTROL BOARD and 5004 Bergenline Realty, L.L.P., Defendants-Respondents.
No. A-1596-08T1
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 2009.
Decided November 16, 2009.
*1186 Northeast New Jersey Legal Services, Inc., attorneys for appellant (Karla Y. Garcia, of counsel and on the brief).
Dario & Yacker, Fort Lee, attorneys for respondent West New York Rent Control Board (Brian Eyerman, of counsel and on the brief).
Thomas L. Curcio, Union City, attorney for respondent 5004 Bergenline Realty, L.L.P.
Before Judges CARCHMAN, PARRILLO and ASHRAFI.
The opinion of the court was delivered by
ASHRAFI, J.S.C. (temporarily assigned).
Plaintiff Gloria Osoria appeals the decisions of defendant West New York Rent Control Board and the Law Division of the Superior Court that her ten-year tenancy lost the protection of a local rent leveling ordinance when her landlord converted the building to an exempt, owner-occupied, four-family dwelling. Because the ordinance is silent on the effect that conversion of rental property may have on the relative rights of tenants and landlords, we must determine whether the Board and the court interpreted the ordinance correctly, as well as address a conflict in our own prior decisions.
Although our analysis differs in part from that of the Law Division, we conclude that the Board and the Law Division correctly dismissed Osoria's complaints. See Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968) (a decision *1187 may be affirmed on grounds other than those relied upon by the trial court), overruled on other grounds, Lang v. Zoning Bd. of Adj., 160 N.J. 41, 53, 733 A.2d 464 (1999); Grow Co. v. Chokshi, 403 N.J.Super. 443, 467 n. 8, 959 A.2d 252 (App.Div.2008) (same).
We hold that the West New York rent leveling ordinance provides tenant protections that are at least coextensive with New Jersey's Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, but that neither the Anti-Eviction Act nor the municipal ordinance implicitly creates vested rights protecting tenants whose buildings are converted from non-exempt to exempt status. We disagree with the contrary holding of Surace v. Pappachristou, 244 N.J.Super. 70, 76, 581 A.2d 875 (App.Div. 1990), regarding the Anti-Eviction Act, and we disapprove a similar contrary holding of Chambers v. Nunez, 217 N.J.Super. 202, 524 A.2d 1359 (Law Div.1986).

I.
The relevant facts are not in dispute. Osoria moved into her son's apartment in West New York in about 1997. At that time, the three-story building had five residential units and two stores. The rent for the residential units was controlled by the West New York rent leveling ordinance. W.N.Y. Mun.Code, c. 312 (1982).
In 2000, defendant 5004 Bergenline Realty, L.L.P., a partnership of two brothers, purchased the property and became the landlord. Also in 2000, Osoria's son moved out of the apartment. In 2001, the landlord attempted to raise the rent. When Osoria and her son refused to enter into a new lease at the higher rent, the landlord brought a landlord-tenant eviction action in the Superior Court, Special Civil Part (hereinafter referred to as "landlord-tenant court"). The parties settled that action, and Osoria was named as the tenant on a new lease.
In 2006, the landlord obtained permits from the municipality and remodeled the building, moving a staircase and eliminating an apartment and one store on the ground floor. The building now has one store on the ground floor and four apartments above. In 2007, the general partner of the landlord 5004 Bergenline Realty, L.L.P. moved into one of the apartments. Thus, the landlord claimed that the building became owner-occupied with four residential units.
Believing that the rent leveling ordinance no longer applied to its building, the landlord served Osoria with a notice to quit her tenancy or, alternatively, to enter into a new lease increasing her monthly rent to $750. The increase was substantially more than permitted by the rent leveling ordinance. Osoria agreed to pay $427 rent and tendered that amount each month, but the landlord has not accepted that amount as rent.
Osoria filed a complaint with defendant Rent Control Board in June 2007. The Board held hearings on three dates from September 2007 through February 2008. The hearings focused primarily on whether the building actually contained four or five residential apartments and whether the general partner was a bona fide resident of an apartment in the building. But counsel for Osoria also asserted that her client was protected by the rent leveling ordinance even if the building was converted to four residential units and the partner was living in one of the apartments. The Board concluded that the partner was a bona fide resident. It also decided that the building was converted into a four-family dwelling, exempting it from the rent leveling ordinance. By written decision, the Board denied Osoria's complaint of rent overcharge.
The landlord immediately filed a complaint in the landlord-tenant court to evict *1188 Osoria for failure to pay the charged rent. Osoria, in turn, challenged the Board's decision by filing an action in lieu of prerogative writs in the Superior Court, Law Division, in accordance with Rule 4:69. The landlord's eviction action was then consolidated with the prerogative writs action.
Following argument, the Law Division rendered an oral decision and entered an order on October 24, 2008, dismissing Osoria's prerogative writs complaint. The court concluded, as had the Board, that Osoria was not protected by the West New York rent leveling ordinance because the building was now exempt as an owner-occupied, four-family dwelling. Pending appeal, the parties agreed that Osoria would pay into escrow the difference between the rent the landlord sought and the rent permitted under the rent leveling ordinance, and the eviction action was voluntarily dismissed.
On appeal, Osoria does not challenge the Board's factual finding that the general partner of the landlord is a bona fide resident of the building, or that the building now has only four residential units. She asserts that the Board and the Law Division erred in concluding that her building is exempt from the West New York rent leveling ordinance. She also challenges a Board member's allegedly ex parte inspection of the building and acceptance of his report by the Board.

II.
The West New York ordinance applies rent controls to all "controlled housing space" in the municipality, W.N.Y. Mun. Code § 312-3(A) (2007), but contains the following relevant exemptions:
The following structures are exempt from this chapter:
. . . .
(2) Owner-occupied two-, three- and four-family dwellings .... provided, however, that rental units of four-family owner-occupied dwellings shall only become exempt upon the tenant who resided in the unit on or before April 20, 1994, vacating said unit. Any tenant whose initial occupancy in an owner-occupied four-family dwelling occurs, after April 20, 1994, is not protected by this chapter.
(3) Only those commercial business buildings that are owner-occupied in one separate dwelling unit therein, provided that not more than two residential dwelling units exist therein.
[Id. § 312-3(B).]
The Law Division concluded that the plain language of this ordinance exempts defendant's building from rent controls because it is now an owner-occupied, four-family dwelling, and Osoria began occupancy after 1994. Osoria contends that she had pre-conversion vested rights in rent control protections when she began occupancy in a five-unit building that was covered by the ordinance. Alternatively, Osoria contends that, under subsection (3) of the ordinance, the building is a commercial business building with more than two residential units and, therefore, not exempt from rent controls.
The ordinance is silent as to conversion of a building from one that is subject to rent controls to one that is exempt. Also, the ordinance defines neither "four-family dwelling" nor "commercial business building." The Law Division concluded that conversion of the building to make it exempt is irrelevant to whether Osoria is protected by the ordinance because she began her occupancy after April 20, 1994. It also concluded that the Board acted within its powers in allowing one of its members to report on his inspection of the building and concluding that the building was essentially residential rather than commercial.
*1189 When interpreting an ordinance, our scope of appellate review is plenary. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995); Wyzykowski v. Rizas, 132 N.J. 509, 518-20, 626 A.2d 406 (1993); Cherney v. Matawan Borough Zoning Bd. of Adj., 221 N.J.Super. 141, 144-45, 534 A.2d 41 (App.Div.1987). We do not grant any special deference to the interpretation of the ordinance reached by the Board or the court below; we analyze the ordinance anew to determine its meaning and how it applies to the facts of this case. See Jantausch v. Borough of Verona, 41 N.J.Super. 89, 96-97, 124 A.2d 14 (Law Div.1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957).

III.
Osoria relies on four reported decisions to support her argument that she gained vested rights in rent control protections when she became a resident of a five-unit building covered by the ordinance.
In G.D. Management Co. v. Negri, 182 N.J.Super. 409, 442 A.2d 611 (App.Div. 1982), we considered conversion of rental units that were covered under a municipal rent leveling ordinance to separately owned condominiums that were not explicitly covered by the ordinance. We concluded that the ordinance itself was silent as to the effect of such a conversion but that legislative guidance regarding continuing tenant protections was provided in the Horizontal Property Act, N.J.S.A. 46:8A-1 to -28, the Condominium Act, N.J.S.A. 46:8B-1 to -30, and amendments enacted as L. 1975, c. 311, to the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12.
We held that the protections of the rent control ordinance were coextensive with protections against eviction of tenants provided by the Anti-Eviction Act and the other statutes. Negri, supra, 182 N.J.Super. at 414, 442 A.2d 611. Tenants that began their tenancy before conversion were entitled to protections for as long as their tenancies continued under the statutes. The amendments to the Anti-Eviction Act, contained in N.J.S.A. 2A:18-61.1(k), -61.2(g), -61.10, and -61.11, provided continuation of the tenancy for at least three and as much as eight years after rental units were converted to condominiums. During that time, the tenant was entitled to protection under both the Anti-Eviction Act and the local rent control ordinance. Negri, supra, 182 N.J.Super. at 414, 442 A.2d 611.
The Supreme Court approved the holding of Negri in AMN, Inc. v. Township of South Brunswick Rent Leveling Board, 93 N.J. 518, 532, 461 A.2d 1138 (1983). It, too, concluded that protections of local rent control ordinances continue for pre-conversion tenants of condominiums for the duration of the tenancy, which in turn is controlled by the Anti-Eviction Act. Id. at 531-32, 461 A.2d 1138. Therefore, we must look to the Anti-Eviction Act to determine the continuity of protection provided by a local rent control ordinance.
In Chambers, supra, 217 N.J.Super. 202, 524 A.2d 1359, the Special Civil Part ventured beyond the holdings of Negri and AMN, Inc. and held that tenants have vested rights to protection under the Anti-Eviction Act when the structure of a building is physically converted to one that would otherwise be exempt under that Act. Id. at 207-08, 524 A.2d 1359. The court considered factual circumstances similar to this case. The landlords in Chambers lived on the first floor of a building with three other rental units. Because the building had more than two rental units, the tenants were entitled to the protections of the Anti-Eviction Act. See N.J.S.A. 2A:18-61.1 (Anti-Eviction Act does not apply to "owner-occupied premises with not more than two rental *1190 units." (Emphasis added)). When one of the tenants moved out, the landlords converted two rental units into one larger one, thus reducing the number of rental units to two. They then attempted to evict the tenant occupying the remaining smaller apartment. The landlord-tenant court held that the tenant's statutory rights under the Anti-Eviction Act were not "derogate[d]" by the landlords' conversion of the building to one that would otherwise be exempt under the law. Chambers, supra, 217 N.J.Super. at 207-08, 524 A.2d 1359.
In Surace, supra, 244 N.J.Super. 70, 581 A.2d 875, we followed the reasoning of Chambers. The landlords had purchased a five-unit building, moved into one unit, and subsequently expanded their living quarters as tenants moved out. Ultimately, the building was converted into owner-occupied premises with only two other rental units. We held that the Anti-Eviction Act continued to protect the remaining tenants, stating:
plaintiffs, having taken title to the property knowing that the tenants were protected by the Anti-Eviction Act, cannot now remove that protection by deleting just enough from the rental market to render the premises exempt from the "good cause" provisions of the Act.
[Id. at 76, 581 A.2d 875.]
Relying on these precedents, Osoria argues that she had vested rights as a tenant before her building was converted into a structure that would otherwise have come within the exemption of the West New York ordinance for an owner-occupied, four-family dwelling. W.N.Y. Mun.Code § 312-3(B)(2) (2007).
Osoria fails to cite a conflicting precedent of this court, Dempsey v. Mastropasqua, 242 N.J.Super. 234, 576 A.2d 335 (App.Div.1990), certif. denied, 126 N.J. 330, 598 A.2d 889 (1991). In Dempsey, we held that tenants do not have vested rights in the protections of the Anti-Eviction Act when the landlord converts the structure to one that is exempt from that Act. We reasoned that affording tenants a vested right based on the pre-conversion status of the building would be both "inappropriate judicial legislation" and inconsistent with the Anti-Eviction Act. Id. at 239, 576 A.2d 335.
A provision of that Act, N.J.S.A. 2A:18-61.1(l)(3), grants owners of buildings with three or fewer residential rental units the right to evict a tenant if they intend to occupy the unit themselves. Because the building would then become "owner-occupied premises with not more than two rental units," the plain language of the statute would exempt it from the Anti-Eviction Act. N.J.S.A. 2A:18-61.1. We said that a construction of the statute that creates vested rights of tenants "would countervail the complementary purpose of the exemption and N.J.S.A. 2A:18-61.1(l)(3) which assure an owner of a building, with a small number of residential units, can reside in the building and have control over the persons with whom an owner lives." Dempsey, supra, 242 N.J.Super. at 239, 576 A.2d 335.
Within four months after deciding Dempsey, we decided Surace, supra, 244 N.J.Super. 70, 581 A.2d 875, but we did not acknowledge the conflicting holding of Dempsey.[1] We now do so and address these conflicting holdings in reaching our conclusions in this case.
We begin by restating the holding of AMN, Inc., supra, 93 N.J. at 531, 461 A.2d 1138, that "all preconversion tenants during *1191 the period in which they are protected from eviction are also protected by [a] rent control ordinance." Next, we note that neither the Anti-Eviction Act nor West New York's rent leveling ordinance addresses circumstances where structural conversion reduces the number of units in a building so that it becomes exempt. At the same time, the Anti-Eviction Act does not address vesting of a tenant's rights, while West New York's ordinance sets an April 20, 1994 date for continuing protection of tenants occupying four-family dwellings. W.N.Y. Mun.Code § 312-3(B)(2) (2007).
Defendants and the Law Division relied upon the provision of the ordinance stating, "Any tenant whose initial occupancy in an owner-occupied four-family dwelling occurs, after April 20, 1994, is not protected by this chapter." Ibid. The Law Division concluded that because Osoria began her tenancy after 1994, she is not protected by the ordinance. Osoria argues logically that her "initial occupancy" was not in an owner-occupied, four-family dwelling but in a five-residential-unit dwelling that was not owner-occupied. So, she contends, the quoted provision of the ordinance does not apply to her tenancy.
We think neither side's position controls whether Osoria has vested rights to rent control protection. Because AMN, Inc., supra, 93 N.J. at 531, 461 A.2d 1138, held that protections under rent control ordinances must be at least coextensive with rights under the Anti-Eviction Act, the vesting provision of the West New York ordinance only for pre-1994 tenancies does not control the relative rights of Osoria and her landlord. That is so because West New York did not have power to abrogate a statutory right of tenants who began occupancy after April 1994 by enacting a rent leveling ordinance that is inconsistent with the protections of the Anti-Eviction Act and the holdings of AMN, Inc. and Negri.
The Anti-Eviction Act itself provides guidance as to whether Osoria's protections were vested and thus could not be superseded by structural conversion of the building. We conclude now, as we did in Dempsey, supra, 242 N.J.Super. at 239, 576 A.2d 335, that the Anti-Eviction Act does not afford such vested rights.
Contrary to the implication of Surace, supra, 244 N.J.Super. at 75, 581 A.2d 875, and Chambers, supra, 217 N.J.Super. at 207, 524 A.2d 1359, several provisions of the Anti-Eviction Act are in "derogation" of tenants' rights against eviction. See N.J.S.A. 2A:18-61.1(g) (removal of tenants to effect compliance with housing or health and safety regulations); -61.1(h) (removal of tenants when permanently retiring building from residential use); -61.1(k) (removal of tenants for conversion to condominium, cooperative, or fee simple ownership); and -61.1(l) (removal of tenants to allow personal occupancy by owner or buyer). These provisions address both structural changes in the building and changes in the ownership or occupancy of the rental units without any structural changes.
The Anti-Eviction Act provides continuing, but only temporary, protections for tenants whose rights are affected by the cited provisions. See N.J.S.A. 2A:18-61.2(c) (three months' notice prior to eviction action for removal of tenant under N.J.S.A. 2A:18-61.1(g)); -61.2(d) (expiration of lease and eighteen months' notice required for removal under -61.1(h)); -61.2(f) (expiration of lease and two months' notice required for removal under -61.1(l)); and -61.2(g) (expiration of lease and three years' notice, as well as other requirements, for removal under -61.1(k)).
In Surace, supra, 244 N.J.Super. at 73, 581 A.2d 875, we observed that, read literally, *1192 the Anti-Eviction Act does not support the view that tenants have vested rights to continue their tenancy despite conversion. Nevertheless, we recognized such implicit rights based on our perception of the "legislative design" and "purpose" of the Anti-Eviction Act to protect tenants. Id. at 75, 581 A.2d 875 (quoting Bradley v. Rapp, 132 N.J.Super. 429, 433, 334 A.2d 61 (App.Div.), certif. denied, 68 N.J. 149, 343 A.2d 437 (1975)).
If, however, the Legislature intended to establish vested rights for tenants whose rental units were subject to the Act at the time of initial occupancy but later became exempt, there would be little need to enact specific provisions providing rights of limited duration after changes in the status and structure of the rental premises. In other words, vested rights of tenants would apply across the spectrum of conversions and changes in rental buildings and units, including for demolition or repairs under N.J.S.A. 2A:18-61.1(g), retirement from residential use under -61.1(h), conversion to condominiums under -61.1(k), or owner-occupancy under -61.1(l). Those subsections of the Anti-Eviction Act would not just be superfluous; they would actually limit rights of tenants rather than providing greater protections than otherwise found in the statute as a whole. Such a result is clearly contrary to the rationale of the decisions in AMN, Inc., supra, 93 N.J. at 530, 461 A.2d 1138, and Negri, supra, 182 N.J.Super. at 413-14, 442 A.2d 611.
Those decisions recognized the time limitation of the tenants' pre-conversion rights. AMN, Inc., supra, 93 N.J. at 530, 461 A.2d 1138; Negri, supra, 182 N.J.Super. at 413, 442 A.2d 611. They were also grounded upon express protections contained in statutes, namely, the Horizontal Property Act, N.J.S.A. 46:8A-1 to -28; the Condominium Act, N.J.S.A. 46:8B-1 to -30; and the Anti-Eviction Act itself, N.J.S.A. 2A:18-61.1 to -61.12. AMN, Inc., supra, 93 N.J. at 527-28, 461 A.2d 1138; Negri, supra, 182 N.J.Super. at 412-13, 442 A.2d 611. See also Senior Citizen and Disabled Protected Tenancy Act, N.J.S.A. 2A:18-61.22 to -61.39 (up to forty years' protection against eviction provided to certain elderly and disabled tenants); Tenant Protection Act of 1992, N.J.S.A. 2A:18-61.40 to -61.59 (protections for low income tenants).
There would be no time limitation if the Anti-Eviction Act itself creates vested rights of remaining tenants where an owner moves into a converted building. Such vested rights are neither addressed in the words nor consistent with the overall scheme of the Anti-Eviction Act.
Subsection (l) of N.J.S.A. 2A:18-61.1 permits an owner to evict a tenant so that the owner or a buyer of the premises can personally occupy the tenant's unit, but it requires a minimum of two months' notice and expiration of any written lease. N.J.S.A. 2A:18-61.2(f). Once that unit is occupied by the owner or buyer, the introductory language of N.J.S.A. 2A:18-61.1 exempts the entire building from application of the Anti-Eviction Act, provided the building has no more than two units rented to tenants. An owner who lives in the building may remove tenants in accordance with N.J.S.A. 2A:18-53(a), applicable to removal of holdover tenants, that is, tenants that remain in the premises beyond the terms of their rental agreements. Bradley v. Rapp, supra, 132 N.J.Super. at 434, 334 A.2d 61.
As we said in Dempsey, supra, 242 N.J.Super. at 239, 576 A.2d 335, if pre-conversion tenants in exempt buildings were to be granted vested rights, an owner could not move into a two-or three-family house and have control over the persons with whom the owner lives. A purchaser of a two-family house, or possibly a mother-daughter *1193 home, could be prohibited from evicting all tenants in accordance with the law so that the purchaser and other family members can occupy the residential units. We believe the Anti-Eviction Act permits such evictions.
Because we find no pre-conversion vested rights in the language of the Anti-Eviction Act, except where the Act itself or another statute explicitly establishes such rights, and also because creating such rights judicially is inconsistent with other parts of the Act, we conclude that no pre-conversion rights are established by the Anti-Eviction Act where a building is converted to an otherwise exempt owner-occupied dwelling. Although Osoria began her tenancy in a five-unit residential building subject to West New York's rent leveling ordinance, we hold that she did not have a vested right to continuing rent control protection.

IV.
Osoria argues alternatively that her tenancy rights are protected by subsection 312-3(B)(3), rather than subsection 312-3(B)(2), of the West New York ordinance. She contends that her building is not an exempt four-family dwelling but a commercial business building with more than two residential units and, thus, not exempt. The Board rejected this argument, finding that the building is an owner-occupied, four-family dwelling subject to the exemption contained in subsection (2).
Osoria's contention essentially challenges a finding of fact by the Board rather than interpretation of the ordinance. The ordinance itself does not define "commercial business building." Nor does the record contain any evidence of legislative intent or customary usage to assist in understanding the term.
The ordinance does define "dwelling" as including "any buildings or structures ... rented or offered for rent to one or more tenants or family units and contains [sic] the usual facilities of a residence which includes a permanent kitchen, bathroom and at least one room sufficient in size to accommodate sleeping quarters." W.N.Y. Mun.Code § 312-1 (2007). The record supports the Board's implicit finding that the subject premises fit within this definition.
Osoria relies upon a written statement of the West New York code enforcement officer that the building is located in a commercial retail zoning district of the municipality. That information, while relevant, is not sufficient to classify the building as a commercial business building. The landlord also provided documentary evidence, including a registration certificate with the New Jersey Department of Community Affairs, to establish the building as residential in nature.
Osoria also contends that the Board exceeded its powers when it allowed one of its members to state his conclusions about the nature of the building after conducting a personal inspection. Local boards, however, are permitted to conduct site inspections, in addition to relying on their general knowledge of local conditions. Giordano v. City Comm'n of Newark, 2 N.J. 585, 588, 67 A.2d 454 (1949); Smith v. Fair Haven Zoning Bd. of Adj., 335 N.J.Super. 111, 119, 761 A.2d 111 (App. Div.2000); Baghdikian v. Bd. of Adj. of Ramsey, 247 N.J.Super. 45, 50, 588 A.2d 846 (App.Div.1991). Counsel and opposing parties need not be present during a site inspection, but notice of intention to inspect should be given. Smith, supra, 335 N.J.Super. at 119, 761 A.2d 111.
Here, the primary factual issues before the Board were the number of residential units and the residency of the landlord. At the hearing on November 28, 2007, the landlord's attorney invited the Board to inspect the building to observe the number *1194 of apartments and the partner's residence. Although the Board member who inspected the building did not give notice of the specific time of his inspection, Osoria and her attorney were aware that an inspection might be conducted. They had ample opportunity over the course of the lengthy hearing to present evidence that the building was a commercial business building rather than a four-family dwelling. See Smith, supra, 335 N.J.Super. at 119, 761 A.2d 111; Baghdikian, supra, 247 N.J.Super. at 52, 588 A.2d 846.
In hindsight, the Board member's statement following his inspection did not address factual details that would have enhanced the record. See id. at 50, 588 A.2d 846 ("The only caveat to a board's reliance on its members' personal knowledge of local conditions is that the facts relied on be placed on the record."). Counsel for Osoria, however, did not press the issue or question the Board member about his conclusion that the subject premises were "residential with some commercial in it." See id. at 52, 588 A.2d 846 (counsel made no objection to the board member's statements and was given ample opportunity to refute them).
The Supreme Court has recognized that local boards are composed of laymen who are not expected to adhere strictly to all judicial strictures in conducting hearings. Kramer v. Bd. of Adj. of Sea Girt, 45 N.J. 268, 284, 212 A.2d 153 (1965); see Baghdikian, supra, 247 N.J.Super. at 49-50, 588 A.2d 846. Furthermore, we have said that "[l]ocal officials who are thoroughly familiar with their community's characteristics and interests and are proper representatives of its people, are undoubtedly the best equipped to pass initially" on issues within their jurisdiction. Id. at 50, 588 A.2d 846 (quoting Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954)).
We conclude that the Board's determination that the subject building is a four-family dwelling rather than a commercial business building was not arbitrary, capricious, or unreasonable. See Jock v. Zoning Bd. of Adj. of Twp. of Wall, 184 N.J. 562, 596, 878 A.2d 785 (2005); Kramer, supra, 45 N.J. at 296, 212 A.2d 153.
The order of October 24, 2008, dismissing Osoria's prerogative writs complaint is affirmed.
NOTES
[1] In our decision in Dempsey, we had overruled the decision of the Law Division in Surace, reported at 236 N.J.Super. 81, 564 A.2d 134 (Law Div.1989), aff'd, 244 N.J.Super. 70, 581 A.2d 875 (App.Div.1990). Dempsey, supra, 242 N.J.Super. at 236, 238, 576 A.2d 335.