247 N.J. Super. 45 (1991)
588 A.2d 846
VATCHE BAGHDIKIAN AND ELBIZ BAGHDIKIAN, HIS WIFE, DOING BUSINESS AS SADDLE ACRES SCHOOL, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF RAMSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 1991.
Decided March 28, 1991.
*46 Before Judges GAULKIN, HAVEY and SKILLMAN.
Contant, Schuber, Scherby & Atkins, attorneys for appellant (Andrew T. Fede on the brief).
Respondents did not file a brief.
The opinion of the court was delivered by HAVEY, J.A.D.
In this action in lieu of prerogative writs, plaintiffs applied to the defendant Ramsey Zoning Board of Adjustment (Board) for a special reasons variance to expand a nursery school, a nonconforming use situate in a residential zone. The trial judge reversed the Board's denial of the variance because a Board *47 member had made a site inspection without notice to and the presence of the parties or their counsel. We reverse. We hold that the presence of the parties or their counsel is not necessary during a site inspection by a board or any of its members. While it is preferable that a board or its member give notice, if practicable, of an intended site inspection, here the failure to give notice was not fatal since the Board member placed his observations of the inspection on the record, the plaintiffs and objectors were given full opportunity to respond to the Board member's comments, and plaintiffs did not object to the comments.
Plaintiffs own property in the Borough of Ramsey containing three structures: a two-story Victorian dwelling, a garage, and a building used as a nursery school. The school conducts morning and afternoon sessions for 28 children, ages infant to 4 1/2. As part of the daily routine, the children have play periods twice daily on a playground located on the rear of the property close to contiguous residences.
Plaintiffs applied to the Board for a special reasons variance, N.J.S.A. 40:55D-70d(2), to expand the enrollment of the nursery school, a nonconforming use, to 67 students by converting the Victorian dwelling into a second school facility. On the second night of the hearing, plaintiffs' real estate expert testified that there was no "adverse noise level or anything that would affect property values" connected with the school. Robert Judge, a Board member, questioned the expert about the noise generated in the playground during play periods. Judge stated that following the initial hearing he had visited the property twice while the playground was in use and had observed that the "noise is very loud." It was his view that the noise adversely affected neighboring property values:
I would say that if you're going to double the enrollment here, and double that noise level, ... I don't think anyone really would want to purchase a home ... next to a school where you're going to double the application. That's what I'm trying to say.
*48 It is undisputed that Judge had given no notice to the parties, nor presumably to the other Board members, of his intention to make the site visits.
Several adjoining property owners also appeared and questioned plaintiffs' expert's conclusion regarding adjoining property values. One neighbor testified that he had found the present noise "of children screaming, playing, crying babies offensive, and it's close enough to my property" to affect adversely its value.
The Board denied the application, concluding that while plaintiffs may have demonstrated special reasons, they failed to satisfy the negative criteria under N.J.S.A. 40:55D-70. The Board found:
Due to the recognized noise problem that presently exists and the fact that the present non-conforming use is located in a residential area and abuts several single family residences, a serious detriment to the public good would occur if the applicants were permitted to expand their present use, and in that regard, does not promote the general welfare of the Ramsey community, and in particular, that of the residential area in which the property is located.
The trial judge reversed the Board's determination and remanded for a new hearing because of Board member Judge's "transgression of well-established protocol" in making the site inspections without notice to and the presence of the parties or their counsel. The judge reasoned that local zoning board members "are the functional equivalent of judges," and as such "ought to be measured by virtually the same ethical standards." He therefore concluded that the Board member's "fact-finding journey" tainted the Board proceedings.
The trial judge's comparison of a zoning board's quasi-judicial function with the function of a trial judge is correct to a point. While a proceeding before a zoning board is not equivalent to a formal trial, "it partakes of the character of a quasi-judicial proceeding which must be governed by a spirit of impartiality uninfluenced by considerations dehors the record." Hill Homeowners Ass'n v. Zoning Bd. of Adj. of City of Passaic, 129 N.J. Super. 170, 179, 322 A.2d 501 (Law Div. 1974), aff'd, 134 *49 N.J. Super. 107, 338 A.2d 824 (App.Div. 1975). A board's function is to make factual determinations based on the record and decide whether the applicant has satisfied the statutory criteria for a variance. Tomko v. Vissers, 21 N.J. 226, 239, 121 A.2d 502 (1956). Its power includes the "judicial" role of deciding questions of credibility and whether to accept or reject testimony, expert or otherwise. See Griggs v. Zoning Bd. of Adj. of Bor. of Princeton, 75 N.J. Super. 438, 446, 183 A.2d 444 (App. Div. 1962) (citing Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201, 157 A.2d 524 (App.Div.), certif. denied, 32 N.J. 347, 160 A.2d 845 (1960)). Also, a proceeding before a board is controlled generally by procedural safeguards not unlike (but not as extensive as) those controlling judicial proceedings. See N.J.S.A. 40:55D-10.
However, a zoning board, as any administrative agency, cannot be equated with courts. Kramer v. Board of Adj., Sea Girt, 45 N.J. 268, 284, 289, 212 A.2d 153 (1965). While procedural safeguards employed in judicial proceedings have some genuine utility and relevance in administrative proceedings, they "may not be transported in toto or imported wholesale into administrative agencies," given the agencies' statutory foundations and special and regulatory concerns. City of Hackensack v. Winner, 82 N.J. 1, 29, 410 A.2d 1146 (1980). Proceedings before a board of adjustment do not have the same "adversary characteristics as proceedings in a court of law," Kramer, 45 N.J. at 289, 212 A.2d 153, and a "rigid formality is neither practical nor necessary." Tomko, 21 N.J. at 238, 121 A.2d 502. It must be kept in mind that boards are composed of laymen, and the prescribed pattern of the administrative proceeding "is a general and flexible one, adaptable to the particular case." Kramer, 45 N.J. at 284, 212 A.2d 153 (quoting Tullo v. Township of Millburn, 54 N.J. Super. 483, 496, 149 A.2d 620 (App.Div. 1959)).
Further, boards of adjustment do not function in a vacuum. Kramer, 45 N.J. at 284, 212 A.2d 153. It is firmly settled that *50 a board may and indeed is expected to bring to bear in its deliberations the general knowledge of the local conditions and experiences of its individual members. Reinauer Realty Corp., 59 N.J. Super. at 201, 157 A.2d 524. A board's consideration of the members' personal knowledge in its deliberation is rooted in the well-founded notion that "[l]ocal officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications for variance." Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954). Indeed, it is because of the board members' "peculiar knowledge of local conditions" that we allow "wide latitude in the exercise of [the board's] delegated discretion." Medici v. BPR Co., 107 N.J. 1, 23, 526 A.2d 109 (1987) (quoting Kramer, 45 N.J. at 296, 212 A.2d 153).
In view of its flexible role, it makes good sense not to straitjacket a board of adjustment with all of the rigid procedural standards imposed upon trial judges. Cf. Wallington Home Owners Ass'n v. Borough of Wallington, 130 N.J. Super. 461, 465, 327 A.2d 669 (App.Div.), aff'd o.b., 66 N.J. 30, 327 A.2d 657 (1974) ("A judge's private knowledge is entitled to no weight at all."). For example, it would be an absurd result to invalidate a well-founded determination by a board simply because it relied in part on a member's personal knowledge of a site condition gleaned from that member's daily drive by the site on his or her way to work. Such a result would forfeit the wealth of knowledge of local conditions possessed by board members as well as the board's unique ability to apply that knowledge to a particular application.
The only caveat to a board's reliance on its members' personal knowledge of local conditions is that the facts relied on be placed on the record. See Gougeon v. Board of Adj. of Bor. of Stone Harbor, 52 N.J. 212, 221, 245 A.2d 7 (1968); Kramer, 45 N.J. at 284, 212 A.2d 153; Reinauer Realty Corp., 59 N.J. Super. at 203, 157 A.2d 524; 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 37.06, at 79 (4th ed. 1985); W. *51 Cox, New Jersey Zoning and Land Use Administration § 27-7.4(b), at 331 (1990). If such facts are undisclosed "the parties would be denied the essence of a hearing, they would be kept in ignorance of the things controlling the action of the board, and due process would be flouted." Giordano v. City Comm'n of City of Newark, 2 N.J. 585, 589, 67 A.2d 454 (1949). Disclosure on the record is also essential for proper appellate review, if necessary. Id.
In addition to reliance on the personal knowledge of board members, site inspection by zoning boards has been expressly approved by our Supreme Court as an invaluable technique in acquiring "first hand knowledge ... in the determination of zoning cases." Id. at 588, 67 A.2d 454. In Peoples Trust Co. of Bergen Cty. v. Board of Adj. of Bor. of Hasbrouck Heights, 60 N.J. Super. 569, 575, 160 A.2d 63 (App.Div. 1959), we held that board members "may view the property and use their impressions thereof, and may even take into consideration their personal knowledge of the property." In so holding, we distinguished the board's function from that of a trial judge, who "may not go outside of the record and base his ruling on his personal knowledge or facts ascertained from a personal inspection." Id. at 576, 160 A.2d 63. However, in both Giordano, 2 N.J. at 588-89, 67 A.2d 454, and Peoples Trust, 60 N.J. Super. at 575, 160 A.2d 63, the courts stressed that the knowledge gained from a site inspection must be placed on the record so that the essence of a fair hearing is provided and a full reviewable record is made.
We have found no authority for the proposition advanced by the trial judge that the parties or their counsel must be present during the site inspection. While the presence of counsel at a site inspection by a trial judge may be required, see Route 15 Assocs. v. Township of Jefferson, 187 N.J. Super. 481, 490, 455 A.2d 518 (App.Div. 1982), such a requirement in a zoning board proceeding is impractical and ignores the "general and flexible" nature of the administrative proceeding. Kramer, *52 45 N.J. at 284, 212 A.2d 153. For example, if counsel for the applicant must accompany the board or board member during the site inspection, the presence of all of the objectors and neighbors who have appeared at the hearing in opposition to the application, no matter how many, is also necessary. Moreover, such an inflexible rule would prevent a board member from visiting a site at his or her convenience simply because the parties had not accompanied the member.
Although the presence of the parties or their counsel is unnecessary, it is preferable that prior notice of the intended site inspection be given at the hearing, if practicable, in order to afford the applicant and interested parties an opportunity to prepare a response to the knowledge gained by the board member as a result of the inspection. However, we do not deem the failure to give notice as fatal when the board member makes a complete disclosure of his or her knowledge of the site condition gained by the inspection, and the applicants and objectors are given full opportunity to address the board member's comments.
Here, plaintiffs' counsel made no objection to Judge's statements regarding the noise at the nursery school and was given ample opportunity to refute them. Indeed, after Judge's comments, plaintiffs' expert gave testimony that the noise would not be a substantial factor affecting property values. Moreover, plaintiffs' counsel, presumably in response to Judge's comments, suggested to the Board that the playground could be moved to another part of the property, away from adjoining residences, in order to solve the "noise" problem. We are satisfied that the lack of notice to the parties of Judge's intended site inspection did not deprive plaintiffs of a fair hearing. The trial court's setting aside of the Board's determination was therefore erroneous.
The trial judge observed that "[b]ut for the transgression" of the Board member, he would have no difficulty in affirming the Board's denial of plaintiffs' application. We agree that the Board's denial is fully sustainable on the record, since there is *53 ample support for its conclusion that the negative criteria of the statute had not been satisfied; that is, that the variance can be granted "without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. The Board found that an increase in size of the nursery school from 28 to 67 children would pose a substantial detriment to the public good because of the increase in noise and traffic that would be generated in this otherwise residential community. The Board was entitled to reject, as it did, the testimony of plaintiffs' real estate expert that the increase in noise level would not have a detrimental impact on surrounding property values. The Board's denial of the application is fully sustainable.
The order remanding to the Board for a new hearing is reversed. We remand to the Law Division for entry of a judgment affirming the Board's denial of plaintiffs' application.