260 N.J. Super. 341 (1992)
616 A.2d 942
WAYNE SZOKE AND CAROL SZOKE, PLAINTIFFS-APPELLANTS,
v.
THE ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF MONMOUTH BEACH AND ROBERT HOLDEN AND SHARON HOLDEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1992.
Decided November 25, 1992.
Before Judges BILDER, BAIME and WALLACE.
*342 Evan L. Goldman argued the cause for appellants (Levinson, Axelrod, Wheaton & Grayzel, attorneys; Mr. Goldman and Steven M. Hambro, on the brief).
Thomas J. Smith, III argued the cause for respondents Robert Holden and Sharon Holden (Smith, Shaw, Smith & Oxley, attorneys; Mr. Smith, on the brief).
Giordano, Halleran & Ciesla, attorneys for respondent The Zoning Board of Adjustment of the Borough of Monmouth Beach, filed a Statement in Lieu of Brief (Anthony R. Caruso, of counsel; Lisa A. Butto, on the Statement).
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal by abutting objecting landowners from an order of the Law Division upholding a determination of the Monmouth Beach Zoning Board of Adjustment granting defendants Robert and Sharon Holden a minor subdivision of their existing residential property which lies within two zones and also granting the lot owners' application for use and bulk variances to permit the construction of a second residential home on the property. The detailed facts are set forth in the trial judge's oral opinion of October 2, 1991 and need not be repeated here. Suffice it to note that the new lot lies partly in a business zone (Zone B) and partly in a residential zone (Zone A-1), and that relief was granted with respect to a use variance permitting the residence in the business zone, the lot depths for both resulting tracts, and from the rear yard setback for one of the tracts. On appeal, plaintiffs contend, as they did below, that the action of the Board was arbitrary, capricious, and unreasonable and that the Holdens failed to establish the statutory criteria required to justify the grant of the variances. Plaintiffs also contend the participation of a disqualified member of the Board requires that its action be voided. Because we agree with the plaintiffs that the participation amounted to a *343 substantive involvement in the deliberative process, we need not consider their other contentions.
At the start of the hearing of the Holden application, one of the Board members, Edward Thayer, announced he would have to remove himself from the Board for that application. The Chairperson concurred stating: "I realized that you would." The record is barren as to the basis of either statement. We do not know the reason for the disqualification, but the fact that Thayer felt participation would be improper and that the Chairperson apparently concurred in that judgment is sufficient in itself to make any participation by Thayer improper and, if that participation was capable of forming a substantive part of the deliberative process, to require the Board action be voided.
An examination of the record discloses that Thayer participated in the hearing in a significant manner on three occasions. The first time, apparently because of personal knowledge of the municipality's zoning history, he gave the Board background information as to why the Holdens' property and a number of adjacent residential properties were included in the business zone (Zone B) rather than the surrounding residential zones (Zones A and A-1).[1] Had he stopped at this, although it might be viewed as an improper participation, it could not be considered to be capable of forming a part of or affecting the deliberative process and was, in terms of the spirit of impartiality which must govern the Board's proceedings, see Baghdikian v. Board of Adjustment Ramsey, 247 N.J. Super. 45, 48, 588 A.2d 846 (App.Div. 1991), at most an innocuous impropriety. It represented the type of historical information which a zoning board often relies upon its members to furnish and is totally proper when fully disclosed on the record. Id. at 49-51, 588 A.2d 846.
*344 The difficulty is that Thayer went on to point out the residential nature of Zone B lots in the neighboring area and in reply to a comment by the Chairperson that the Board recommend a change in zoning to the Planning Board, he "strongly suggest[ed] that they do that." This comment seriously impacted on the very issue before the Board, the advisability of a variance to permit another residential property in this business zone. It could not be characterized as innocuous.
Thayer's second comments were volunteered in connection with a neighboring owner's concern about the manner in which utilities would be furnished to the proposed new residence and his interest in seeing the use of underground service. After Holden expressed agreement with the concept, Thayer interjected:
Can I answer that question? I'm retired from Jersey Central. I was in charge of Distribution Engineering Department a month ago, so I know the answer for that.
There followed his opinion as to what the electric company would do. Here again, Thayer's comments could not be considered capable of affecting the deliberative process and were, at most, an innocuous impropriety.
Like his first comments, Thayer's final comments could not be characterized as innocuous. At the conclusion of the statements by the objecting abutting owner, Mrs. Szoke, one of the plaintiffs, Thayer made a strong statement of his personal opinion as to the merits of the Holden application.
I'd like to give an opinion. I feel this is the best use for the property because if you take, going by this lady's [Mrs. Szoke] objection to it 
And he proceeded to discuss and refute at some length Mrs. Szoke's objections. He concluded:
All I'm saying is this. That from my point of view, my personal point of view, not as a member of any Board or anything, I feel this is the best use of the property. It's been established already that you're boxed in. Let's face it; because the other two homes, one of which is Mrs. Szoke's has been granted, and, therefore, now, the Planning Board, I would strongly suggest we look at it from the point of making this a residence area and just boxing in the property and so on. I feel that this is in the best interest of the Master Plan and the town itself.
*345 Despite his disclaimer, if Thayer was not actively participating in the deliberations of the Board, he was at least interfering with those deliberations and engaging in conduct which, at the very least, was capable of affecting the deliberations.
Thayer's conduct was totally incompatible with the noninvolvement which he and the Chairperson felt some conflict situation required. It necessarily poisoned the spirit of impartiality with which the Board's quasi-judicial proceedings must be governed. Id. at 48, 588 A.2d 846. The participation of this disqualified member, the existence of this apparent conflict of interest, requires that the Board action be voided. See Barrett v. Union Tp. Committee, 230 N.J. Super. 195, 200, 553 A.2d 62 (App.Div. 1989); Cox, New Jersey Zoning and Land Use Administration § 3-2 at 30-31 (1992).
In their briefs, defendants attempt to minimize Thayer's participation and to distinguish cases in which Board action has been voided because of the participation of disqualified members by emphasizing that Thayer did not vote. Their reliance on the difference is misplaced. To distinguish between substantive participation in the deliberative process and the technical vote would elevate form over substance. The evil of apparent partiality  the perception of less than a fair shake  inheres in the clearly expressed participation in the deliberative process by one whose own conscience required abstinence. Although clearly dicta, as we said in Darrell v. Governing Body of Township of Clark, 169 N.J. Super. 127, 404 A.2d 346 (App.Div. 1979), aff'd, 82 N.J. 426, 413 A.2d 610 (1980):
Although we affirm the trial court disposition of this unfortunate issue, we feel constrained to voice our vigorous and unequivocal disapproval of the action of one who deems himself disqualified from a vote but nevertheless uses his office, and whatever influence he may wield, to influence the votes of others. An official disqualified to vote on any measure, for any reason, must observe the substance as well as the form of his abstention. It simply is insufficient for him to decline to vote while, at the same time, he seeks to influence what the vote will be. [Id. at 132, 404 A.2d 346].
We recognize that board members will on occasion be confronted with conflict situations in which they are more than individuals with a view, in which they are parties entitled to be *346 heard. Board membership does not deprive an individual of a right to pursue an application nor of the right to pursue statutory rights granted to interested parties. See Cox, supra. When a board member exercises such a right, his or her adversary status is fully recognized and understood from the outset. It is incapable of creating any perceptions which are not fully compatible with the spirit of impartiality required of board proceedings. Speaking in Reilly v. Ozzard, 33 N.J. 529, 166 A.2d 360 (1960), Chief Justice Weintraub referred to the cloud which a conflict of interests may cast on the objectivity of discretionary decisions. Id. at 548, 166 A.2d 360. No such cloud can arise, public confidence in a board's proceedings will not be impaired, when a board member publicly and openly steps down from the official position to assert legal rights as an active party participant.
Although this issue is raised for the first time on appeal before us, it concerns a matter of substantial public interest such as requires its consideration. See Pressler, Current N.J. Court Rules, Comment to R 2:6-2 (1991) at 377. The impartiality, indeed the appearance of impartiality, in board proceedings is a matter of overriding public interest.
Reversed.
NOTES
[1] At this point the B Zone comes south like a peninsula to include Lot 26, which Thayer explained had been used for 60 or 70 years or more as a tavern. In order not to spot zone the tavern property the B zone was extended down to encompass that lot.