863 A.2d 416

JOSEPH F. DEEGAN, JR.; MARY B. DEEGAN; GLAD TIDINGS ASSEMBLY OF GOD CHURCH; RAYMOND C. GRAHAM, PASTOR AND RUSSEL BEY, PLAINTIFFS, AND ROLAND A. WINTERS, PLAINTIFF–APPELLANT, v. PERTH AMBOY REDEVELOPMENT AGENCY; CITY OF PERTH AMBOY; PERTH AMBOY PLANNING BOARD; AND KING PLAZA, LLC HOLMDEL, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 16, 2004—Decided January 6, 2005.

Before Judges SKILLMAN, COLLESTER and GRALL.

*Erin E. Kurowicki,* argued the cause for appellant (*The Galvin Law Firm,* attorneys; *Ms. Kurowicki,* on the brief).

*Brent T. Carney,* argued the cause for respondent Perth Amboy Redevelopment Agency (*Maraziti, Falcon & Healey,* attorneys; *Mr. Carney,* of counsel and on the brief).

*Victor A. Afanador,* argued the cause for respondent City of Perth Amboy (*Lite, DePalma, Greenberg & Rivas,* attorneys; *Mr. Afanador,* of counsel and on the brief).

*George S. Szetela,* argued the cause for respondent Perth Amboy Planning Board.

*Steven J. Tripp,* argued the cause for respondent King Plaza, LLC (*Wilentz, Goldman & Spitzer, attorneys*; *Yvonne Marcuse* and *Mr. Tripp,* of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

In 1997, the governing body of the City of Perth Amboy determined that a substantial portion of the City, including large tracts of industrially zoned property and portions of the downtown area, were in need of redevelopment pursuant to the Local Redevelopment and Housing Law, *N.J.S.A.* 40A:12A–1 to –49. The governing body adopted a redevelopment plan for revitalization of this area and established the Perth Amboy Redevelopment Agency (PARA) to implement the plan.

By a resolution adopted on May 28, 2002, PARA approved an agreement with King Plaza, LLC, for redevelopment of a portion of the redevelopment area. King Plaza's proposed project would consist of approximately 250 rental apartments, a supermarket, retail space, a walkway/park and parking facilities.

On June 26, 2002, plaintiffs, who are Perth Amboy property owners, filed this action which sought, among other things, a

declaration that the May 28, 2002 resolution of PARA approving the redevelopment agreement with King Plaza was invalid. The complaint alleged that PARA had violated the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21, by conducting part of the public meeting on the application at a different location than had been indicated in the public notice. The complaint also alleged that the redevelopment agreement was invalid because *N.J.S.A.* 40A:12A–11(a) and the ordinance establishing PARA provide that no more than two agency members may be officers or employees of the municipality, and five members of PARA were officers or employees of Perth Amboy when it approved the agreement.

After a turnover in PARA's membership that eliminated this alleged illegality in its composition, PARA held another public meeting on January 14, 2003 and again adopted a resolution approving the redevelopment agreement with King Plaza.

On February 5, 2003, the Perth Amboy Planning Board conducted a lengthy hearing on King Plaza's site plan application for the redevelopment project, following which the Board granted King Plaza both preliminary and final site plan approval. This approval was memorialized by a resolution adopted on March 5, 2003.

On February 27, 2003, plaintiffs filed a first amended complaint which alleged that the January 14, 2003 resolution of PARA ratifying approval of the redevelopment agreement with King Plaza was invalid because one member of PARA who voted for the resolution, Father Thomas Ryan, had an impermissible conflict of interest. This alleged conflict arose because Father Ryan had been a parish priest of a church that received substantial donations from the principal owner of King Plaza, and he had advocated approval of the redevelopment agreement with King Plaza, as a member of the public, at the first meeting. Plaintiffs' first amended complaint also challenged the Planning Board's approval of King Plaza's site plan application on various grounds, including that the Board had improperly limited objectors' participation at the hearing.

On March 3, 2003, PARA held another public meeting regarding the redevelopment agreement with King Plaza in which Father Ryan did not participate, and it once again adopted a resolution ratifying approval of the agreement.

On July 31, 2003, plaintiffs filed a second amended complaint which alleged, among other things, that two new members of PARA who voted for the March 3, 2003 resolution had not "read the transcripts of the prior proceedings or review[ed] all of the underlying plans, documents and approvals," and consequently that approval was invalid.

The case was presented to the trial court based on transcripts of the proceedings before PARA and the Planning Board and stipulated facts. The trial court concluded in a written opinion that PARA's May 28, 2002 resolution approving the redevelopment agreement with King Plaza and the January 14, and March 3, 2003 resolutions ratifying that approval were all valid. The court also rejected plaintiffs' challenge to the Planning Board's approval of King Plaza's site plan application. Accordingly, the court entered final judgment dismissing plaintiffs' complaint.

Plaintiffs Glad Tidings Assembly of God Church, Raymond C. Graham and Roland A. Winters appealed from the dismissal of the complaint. Subsequent to the filing of appellants' brief, we granted a motion by the Church and Graham to withdraw as appellants. Consequently, only Winters is now pursuing the appeal.

Appellant argues that the May 28, 2002 resolution of PARA approving the redevelopment agreement with King Plaza was invalid because PARA violated the Open Public Meetings Act, and five members of the agency who voted for the resolution were officers or employees of the City. He argues that the January 14, 2003 resolution ratifying that approval was invalid because one member who voted for the resolution, Father Ryan, had a disqualifying conflict of interest, and that the March 3, 2003 resolution again ratifying the approval was invalid because two new members of PARA who voted for the resolution did not certify in writing that they had read the transcripts of the prior public meetings.

Appellant also argues that the Planning Board's approval of King Plaza's site plan application must be reversed because the Board did not afford objectors an adequate opportunity to be heard at the hearing on the application.

We conclude that the March 3, 2003 resolution of PARA ratifying approval of the redevelopment agreement with King Plaza was validly adopted. This conclusion makes it unnecessary for us to consider the validity of the May 28, 2002 and January 14, 2003 resolutions. We also reject appellant's argument regarding the Planning Board's conduct of the hearing at which King Plaza was granted site plan approval.

I

Appellant's argument that the March 3, 2003 resolution ratifying PARA's approval of the redevelopment agreement with King Plaza was invalid is based on a section of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –163, which states:

A member of a municipal agency who was absent for one or more of the meetings at which a hearing was held or was not a member of the municipal agency at that time, shall be eligible to vote on the matter upon which the hearing was conducted, notwithstanding his absence from one or more of the meetings; provided, however, that such board member has available to him the transcript or recording of all of the hearing from which he was absent or was not a member, and certifies in writing to the board that he has read such transcript or listened to such recording. [*N.J.S.A.* 40:55D–10.2.]

However, the MLUL defines "municipal agency" to mean "a municipal planning board or board of adjustment, or a governing body of a municipality when acting pursuant to [the MLUL]." *N.J.S.A.* 40:55D–5. A municipal redevelopment agency such as PARA is plainly not a planning board, board of adjustment or municipal governing body, and a redevelopment agency acts pursuant to the Local Redevelopment and Housing Law, not the MLUL. *See Hirth v. City of Hoboken*, 337 *N.J.Super.* 149, 165, 766 *A.*2d 803, 811 (App.Div.2001). Therefore, the procedural requirements of *N.J.S.A.* 40:55D–10.2 do not apply to a redevelopment agency.

The Local Redevelopment and Housing Law does not contain a provision comparable to *N.J.S.A.* 40:55D–10.2 that requires a member of a redevelopment agency who was absent from a prior meeting to certify that he or she has read a transcript of that meeting. In fact, the Law does not require any evidentiary hearing or even an opportunity for public comment before a redevelopment agency may approve a redevelopment project and enter into an agreement with a developer for construction of the project.[1] *N.J.S.A.* 40A:12A–8(f) simply authorizes a redevelopment agency to "contract with ... redevelopers for the planning, replanning, construction, or undertaking of any project or redevelopment work." The only procedural prerequisites for a redevelopment agency's exercise of this authority are compliance with the requirements of the Open Public Meetings Act that adequate notice be given of the time, date and location of the meeting at which the proposed action will be considered and that the meeting be conducted in public. *See N.J.S.A.* 10:4–8(d), 9(a) and 12(a).

When a redevelopment agency contracts with a developer to construct a redevelopment project, the developer must apply to the municipal planning board for any land use approvals required under the MLUL. *N.J.S.A.* 40A:12–13. A planning board's consideration of such an application is subject to all the procedural requirements of the MLUL, including *N.J.S.A.* 40:55D–10.2, but the redevelopment agency's decision to enter into the contract is governed solely by the provisions of the Local Redevelopment and Housing Law and Open Public Meetings Act, which do not require a public hearing.

---

[1] Although *N.J.S.A.* 40:49–2(b) requires a municipal governing body to provide an opportunity for public comment before adopting an ordinance, and the Open Public Meetings Act requires "a municipal governing body ... to set aside a portion of every meeting ... for public comment on any governmental issue that a member of the public feels may be of concern to the residents of the municipality," *N.J.S.A.* 10:4–12(a), these requirements do not apply to other municipal bodies such as a redevelopment agency.

██ Even if a redevelopment agency elects to conduct a hearing regarding a proposed redevelopment project, there is no reason to read a requirement comparable to *N.J.S.A.* 40:55D–10.2 into the Local Redevelopment and Housing Law because a redevelopment agency's role in approving an agreement with a developer is fundamentally different from a planning board's or board of adjustment's consideration of an application for a land use approval. A hearing on an application for a land use approval is a quasi-judicial proceeding, *Dolan v. DeCapua,* 16 *N.J.* 599, 612, 109 *A.*2d 615, 621–22 (1954); *Willoughby v. Planning Bd. of Township of Deptford,* 306 *N.J.Super.* 266, 273, 703 *A.*2d 668, 671 (App.Div. 1997), and a land use agency is required to decide the application based on the evidence contained in the administrative record. *Kramer v. Bd. of Adjustment, Sea Girt,* 45 *N.J.* 268, 284, 212 *A.*2d 153, 161–62 (1965); *Baghdikian v. Bd. of Adjustment, Borough of Ramsey,* 247 *N.J.Super.* 45, 49, 588 *A.*2d 846, 848 (App.Div.1991). Thus, the requirement of *N.J.S.A.* 40:55D–10.2 that a board member who is absent from part of a hearing certify that he or she has read the transcript is simply a procedural mechanism for assuring that any decision on a land use application is based on the record. *See In re Fichner,* 144 *N.J.* 459, 472–74, 677 *A.*2d 201, 207–08 (1996); *Mercurio v. DelVecchio,* 285 *N.J.Super.* 328, 333–34, 666 *A.*2d 1368, 1370–71 (App.Div.1995), *certif. denied,* 144 *N.J.* 377, 676 *A.*2d 1092 (1996). However, a redevelopment agency's decision to approve a developer's proposed project and enter into a contract for the project is administrative rather than quasi-judicial in nature. *See In re the Request for Solid Waste Util. Customer Lists,* 106 *N.J.* 508, 519, 524 *A.*2d 386, 392 (1987) (recognizing that some agency actions such as "contracting" are "neither adjudication nor rulemaking"); *see also Abramson v. Farrell,* 122 *N.J.Super.* 30, 40–42, 298 *A.*2d 705, 710–12 (App.Div. 1972). Consequently, a member of the agency may determine to vote for approval of a redevelopment agreement based entirely on informal review of its provisions and discussions with agency staff.

██ Moreover, even if a redevelopment agency member who votes to approve a redevelopment agreement were required to

demonstrate familiarity with the project, we would conclude that the two members of PARA who were absent from the May 2002 and January 14, 2003 meetings satisfied this requirement. Before voting to approve the agreement, one of those new members stated:

> [I note] that since I am new to the Agency, that prior to my approval last week by the City Council that I did meet with the Executive Director and we had a ... discussion about plans for the Agency and we discussed each of the area projects. In addition, I did review the minutes for May of 2002 until the current as well as listening to the tapes ... of 2002 which had yet to be put into written form.
>
> In particular to the King's Plaza project, which we are discussing tonight, as a resident of Perth Amboy, I've reviewed the debate of everyone in the papers. I've also reviewed the past minutes, especially for the May meetings when it seemed that this project originally came into being. I also have reviewed the agreement of January 14, 2002,[sic] as well as the original proposal that was proposed for the project.

Similarly, the other new member stated:

> I would just like to interject that regarding this project I have seen the presentation by the developer four times. Twice before this body, twice before the Planning Board and the last time before the Planning Board was after the vote taken here. The amenditure, the vote that you referred to. I've had lengthy discussions with [PARA's executive director] regarding any changes to the project and am familiar, I believe, with the work....

Consequently, even if a requirement comparable to *N.J.S.A.* 40:55D–10.2 applied to a vote by a redevelopment agency member who was absent from a meeting regarding a redevelopment project, the two new members of PARA would have substantially complied with this requirement.

## II

■ Appellant's challenge to the Planning Board's approval of King Plaza's site plan application is based on the fact that the public comment portion of the hearing did not begin until 10:45 p.m. and was not concluded until 12:52 a.m. Appellant argues that the late hour at which public comment was solicited denied due process to objectors.

In support of this argument, appellant relies primarily upon *Witt v. Borough of Maywood,* 328 *N.J.Super.* 432, 453–55, 746 *A.2d* 73, 84–86 (Law Div.1998), which reversed a planning board

resolution granting variances and site plan approval on the ground that the board "deprived [objectors] of the fair opportunity to participate in and present evidence at the hearings conducted by the Planning Board." *Id.* at 453, 746 *A.*2d at 85.[2] In reaching this conclusion, the court stated:

> [The Planning Board] should have adjourned the hearing on November 4, 1996, especially where the objectors were surprised by the order of proceedings sprung upon them at the last minute. The notion that the Planning Board might have actually entertained listening to the objectors' witnesses (even if they were present and ready to testify) *after midnight,* is preposterous. The Planning Board should have continued the hearing to another date to allow all available evidence to be considered.
>
> [*Id.* at 454, 746 *A.*2d at 85.]

Unlike in *Witt,* there is no basis in this case for concluding that the parties opposing King Plaza's site plan application were surprised by the order of proceedings or that they were deprived of the opportunity to present evidence. The Board devoted nearly six hours to hearing evidence and comments in support of and in opposition to the application. The hearing began with King Plaza's presentation, which consisted of testimony by its principal as well as an architect, traffic engineer, building construction engineer and financial consultant. After this presentation, which ended at 10:35 p.m., the Board invited comment from members of the public. Four individuals then spoke in opposition to the project. Following these comments, which took approximately half an hour, an attorney for another objector requested the opportunity to cross-examine King Plaza's witnesses. The Board granted this request, and the attorney then cross-examined those witnesses for more than an hour. The Board also offered attorneys for two other objectors the opportunity to cross-examine King Plaza's witnesses, but they declined. None of the objectors to the site plan application sought to introduce testimony or expert reports. The hearing concluded around 12:45 a.m., following

---

[2] In *Witt v. Borough of Maywood,* 328 *N.J.Super.* 343, 746 *A.*2d 25 (App.Div. 2000), we affirmed other parts of the Law Division's decision which did not involve the validity of the planning board resolution.

which the Board voted to approve the application. This approval was memorialized by a resolution adopted on March 5, 2003.

There is no evidence any member of the public was deprived of the opportunity to speak in opposition to King Plaza's site plan application. Although several objectors noted that other objectors had left the hearing because of the lateness of the hour, there is no indication any of those objectors planned to address the Board. Under these circumstances, there is no basis for reversing the Board's approval of King Plaza's site plan application solely because the hearing continued past midnight. *See Mercurio, supra,* 285 *N.J.Super.* at 334–35, 666 *A.*2d at 1370–71.[3]

Affirmed.

---

[3] Because there is no evidence that any member of the public was prevented from speaking in opposition to King Plaza's application, we have no occasion to consider whether denying a member of the public the opportunity to comment upon a land use application would require invalidation of an approval even if there was no indication that person was prepared to present non-cumulative material evidence.