**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5765-17T3

MICHAEL RANTZ,

      Plaintiff-Respondent,

v.

PLANNING BOARD OF BAY
HEAD,

      Defendant-Respondent,

and

PATRICK WATERS and
SHANNON WATERS,

      Defendants-Appellants.

_____

Argued August 13, 2019 – Decided August 20, 2019

Before Judges Messano and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0626-17.

Angelo Anthony Stio, III argued the cause for appellants Patrick Waters and Shannon Waters (Pepper

Hamilton LLP, attorneys; Jonathan M. Preziosi and Angelo Anthony Stio, III, of counsel and on the briefs).

Citta Holzapfel & Zabarsky, attorneys for respondent Planning Board of Bay Head, join in the briefs of appellants Patrick Waters and Shannon Waters.

Edward F. Liston, Jr. argued the cause for respondent Michael Rantz.

PER CURIAM

Defendants Patrick and Shannon Waters own a home in the Borough of Bay Head (Bay Head) in a single-family residential zone, which permits accessory buildings subject to certain limitations. Defendants' property included an accessory structure at the rear that contained a sink, toilet and shower. As contract purchasers of the property, defendants participated in an informal hearing on the record before the Planning Board (the Board).[1] At that time, Bart Petrillo, the municipality's zoning officer, was a member of the Board and participated in the May 2016 proceeding. The Board recommended that

---

[1] The Board is a unified board that also exercises all powers of a board of adjustment pursuant to N.J.S.A. 40:55D-25(c). However, N.J.S.A. 40:55D-10.1 permits only a planning board, not a board of adjustment, to conduct informal reviews. See also Cox & Koenig, N.J. Zoning and Land Use Administration, §13-2 (2019).

defendants file a development application pursuant to N.J.S.A. 40:55D-68[2] and informally indicated it might look favorably upon the application.

After purchasing the property, defendants filed the application, asserting the sink, toilet and shower had been in the building "for many years," and the building "ha[d] . . . been used for sleeping purposes in the past." Defendants sought to "maintain these facilities . . . as sleeping quarters for family members and guests." In their public notice, defendants stated the application sought "[a] certificate of continuance of a pre-existing non-conforming use . . . to permit the continuation of shower, sink and sanitary facilities in the accessory structure," so defendants could "continue the use of the accessory structure as sleeping quarters for family and guests." The Board held public hearings on the application.

At the first public hearing, Petrillo recused himself "because [he had] spoken at great length to some of the people (indiscernible) ordinance." Patrick

_____

[2] In relevant part, N.J.S.A. 40:55D-68 provides:

> The prospective purchaser . . . or any other person interested in any land upon which a nonconforming use or structure exists may apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming. The applicant shall have the burden of proof.

3                                                              A-5765-17T3

Waters testified, as did several neighbors, all of whom objected to defendant's request. Later testimony from one of the neighbors revealed that she and plaintiff's wife had actually met with Petrillo in July to express their concerns. The Board adjourned the first hearing without taking further testimony. Defendants' subsequent notice to the county planning board in October stated they "intend[ed] to use the accessory structure for uses customarily incidental to that of the primary residential structure," not "as a separate dwelling unit."

For reasons that follow, we need not recount most of the testimony before the Board at the ensuing meetings. It suffices to say that defendants attempted to prove the sink, toilet and shower were in the accessory structure prior to a 2003 amendment to Bay Head's zoning regulations. Prior to the amendment, the ordinance was silent as to whether plumbing fixtures were permitted inside accessory structures; the amendment added language that prohibited "interior plumbing except for . . . clothes washers, dryers and work sinks" in any "accessory building in a residential zone." Borough of Bay Head Ordinance, § 147-6(D)(7). Plaintiff, on the other hand, asserted that if the plumbing fixtures were installed prior to 2003, they had been abandoned.

After considering the testimony of Petrillo, who defendants called without objection as their first witness, nine other witnesses and documentary proof, the

Board voted to issue a certificate of non-conformity as to the sink and toilet, but not the shower. In its January 2018 memorializing resolution, the Board found that the "sink and toilet [were] located in the accessory structure since at least prior to 2003" and no owner had "intended to abandon" their use. Citing Petrillo's testimony, the Board credited his "opinion that prior to the ordinance change in 2003, use of the sink and toilet in the accessory structure [was] permitted" under Bay Head's zoning regulations.

Plaintiff filed a complaint in lieu of prerogative writs challenging passage of the resolution as arbitrary, capricious and unreasonable. Additionally, plaintiff alleged Petrillo's testimony in favor of the application "effect[ed] the deliberative process of the . . . Board . . . and poisoned the spirit of impartiality." Defendants also filed suit challenging the Board's denial of the certificate regarding the shower. The Law Division judge heard oral argument and reserved decision.

He subsequently entered an order vacating the Board's resolution and dismissing defendants' complaint without prejudice.[3] The order also stated that the court made "no findings or decision on the substantive merits of" defendants'

_____

[3] Without citation, defendants' brief states they subsequently withdrew their complaint. In any event, defendants have not cross-appealed the Board's denial of a certificate of non-conformity regarding the shower.

application, "[t]herefore res judicata [was] not invoked and [defendants] may reapply . . . for the same relief . . . .  Likewise, [p]laintiff . . . may interpose the same objections to the requested relief."  The judge explained his rationale in a concise written opinion that accompanied the order.  Quoting Petrillo's testimony before the Board, and citing our decision in Szoke v. Zoning Board of Adjustment, Borough of Monmouth Beach, 260 N.J. Super. 341 (App. Div. 1992), the judge concluded, "[o]nce disqualified . . . Petrillo had an obligation not to further insert himself into the proceedings before the Board.  His testimony, apparently crucial to [defendants'] cause . . . irreparably tainted the proceedings . . . ."

Before us, defendants argue that the factual circumstances here are materially different from those present in Szoke.  They contend that Petrillo's testimony was essentially factual in nature and concerned matters that were undisputed, i.e., that Bay Head's zoning regulations prior to 2003 did not prohibit indoor plumbing in accessory buildings in residential zones.  We agree and reverse.

As noted, defendants called Petrillo, who had served as Bay Head's zoning official since 1999, as their witness and asked him to identify the post-2003 ordinance that generally prohibited plumbing fixtures in accessory buildings,

and the 2002 ordinance that was silent on the subject. Defense counsel then asked:

> Q. [I]t would be your understanding that the zoning ordinance prohibiting plumbing fixtures in an accessory structure came into effect when this ordinance in 2003 was passed?
>
> A. Yes.
>
> Q. Prior to that date, was your understanding and your recollection that such fixtures would have been allowed in an accessory structure?
>
> A. Yes.

That was the extent of direct examination.

The trial judge, however, focused on what defense counsel immediately elicited thereafter on cross-examination.

> Q. Do you know what regulation . . . there was on the books prior to that 2003 ordinance, which says: "An accessory building shall not have interior plumbing except for . . . clothes washers, dryers, and work sinks"?
>
> A. Well, . . . prior to that ordinance, you were allowed to put a bathroom . . . toilet, showers, . . . into the accessory structure.
>
> Q. Where is that in your . . .
>
> . . . .
>
> Q. . . . prior ordinance?

A-5765-17T3

A. It was not . . . prohibited. And if it wasn't prohibited, it was permitted. That's the way it was written.

Q. Isn't that the reverse of what normal zoning reads; if it's not allowed, it's prohibited?

A. Not that I'm aware of.

Q. Was there any specific language in the ordinance prior to 2003 that you're aware of, that specifically allowed any plumbing fixtures in an accessory building?

A. No. But the . . . reason the ordinance was changed: There was concern there were many properties . . . that were converting their garages into pool houses, which consisted of toilets and showers. And the Board . . . was concerned with it, they wanted to prohibit it, so they changed the ordinance.

Q. So they changed the ordinance to only allow certain types of fixtures?

A. Correct.

On redirect, defense counsel asked Petrillo "if a property [owner] had come to you in 2002 with a request for a building permit to install a sink, a shower, a toilet in an accessory structure, would you have granted . . . that permit?" Petrillo answered, "Yes." We have just quoted almost every word of Petrillo's testimony before the Board.

In Szoke, a planning board member recused himself from considering a development application for undisclosed reasons. 260 N.J. Super. at 343. Nonetheless, he "participated in the hearing in a significant manner on three occasions," by offering his "personal knowledge of the municipality's zoning history," "his opinion as to what the electric company would do" to provide service to a proposed building on the subdivided lot, and opining that the development proposal was "the best use for the property." Id. at 343-44. The recused member then "proceeded to discuss and refute at some length" points made by one of the objectors. Id. at 344.

We concluded the first two comments were "innocuous impropriet[ies]," neither of which were "capable of affecting the deliberative process[.]" Ibid. However, the recused member's last comments and conduct were "capable of affecting the deliberations" and "w[ere] totally incompatible with the noninvolvement which he . . . felt some conflict situation required." Id. at 345. We rejected the argument that the recused member's abstention from voting salvaged the board's approval of the application, noting, "To distinguish between substantive participation in the deliberative process and the technical vote would elevate form over substance." Ibid.

A-5765-17T3

Here, with the exception of the hypothetical question posed to Petrillo on redirect examination, almost all of his testimony on direct and cross-examination was "the type of historical information which a zoning board often relies upon its members to furnish and is totally proper when fully disclosed on the record." Id. at 343 (citing Baghdikian v. Bd. of Adj. Ramsey, 247 N.J. Super. 45, 49-51 (App. Div. 1991)). Moreover, despite the language contained in the Board's resolution, Petrillo's testimony was relevant, but somewhat tangential to, the essential question facing the Board, i.e., whether the fixtures pre-existed the 2003 amendment, and if so, whether they had been abandoned by prior owners of the property. Indeed, the Board's decision to conclude the sink and toilet were pre-existing non-conformities, while the shower was not, reflects the entire focus of the hearings.

Moreover, had the issue arisen in a different procedural framework, Petrillo's opinion about the amended ordinance would have been the central concern and focus of the Board's decision. For example, had defendants simply attempted to use the fixtures in the accessory structure without seeking the certificate of pre-existing non-conformity, plaintiff or some other objector would have been forced to seek the Board's review, since that would have ostensibly violated the current ordinance. See N.J.S.A. 40:55D-70(b) (granting

Board power to "[h]ear and decide requests for interpretation of the zoning map or ordinance"); N.J.S.A. 40:55D-72(a) (allowing "any interested party" to appeal to the Board if "affected by any decision of an administrative officer . . . based on or made in the enforcement of the zoning ordinance."). See also Mullen v. Ippolito Corp., 428 N.J. Super. 85, 105-06 (App. Div. 2012) (explaining objector's right to pursue mandamus action when municipality's zoning officer failed to respond to complaints about zoning violations). The obvious point is that in those procedural circumstances, the Board would have been required to consider, indeed review, Petrillo's understanding of the pre- and post-2003 ordinances.

Lastly, plaintiff never objected to defendants calling Petrillo as a witness, thereby eliminating the Board's opportunity to consider whether his testimony was necessary, and if so, whether it should be properly limited. The lack of any objection also eliminated defendants' opportunity to adduce equivalent testimony by other means or with another witness.

As it was, defendants elicited exceedingly limited testimony on direct examination that was purely factual in nature. It was plaintiff's counsel who expanded the scope of inquiry by debating Petrillo's interpretation of the earlier ordinance. The fact that the Board cited Petrillo's "opinion" about the meaning

A-5765-17T3

of the pre-2003 ordinance was solely the result of plaintiff's counsel's questioning.  In any event, "where a Board member has such a tenuous appearance of impropriety as in this case, a party cannot make a strategic decision to not challenge the alleged impropriety at the hearing in order to save it as a trump card on appeal, in the event of an adverse decision."  Sugarman v. Twp. of Teaneck, 272 N.J. Super. 162, 171 (App. Div. 1994).

Reversed.  Because the Law Division judge never considered the merits of plaintiff's challenge to the Board's resolution, we reinstate count one of plaintiff's complaint and remand the matter to the trial court for further proceedings.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5765-17T3