**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2006-23

PETER AULERT, MARILYNNE
AULERT, and PMA MOTORS
INC., t/a ROBINSON'S GARAGE,

     Plaintiffs-Appellants,

v.

MAYOR and TOWNSHIP
COMMITTEE OF BRICK,
NEW JERSEY,

     Defendants-Respondents.

_____

Submitted January 30, 2025 – Decided April 4, 2025

Before Judges Natali, Walcott-Henderson, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1590-18.

Maurice J. Maloney, attorney for appellants (Jeff Thakker, of counsel; Maurice J. Maloney, on the briefs).

Kevin B. Riordan, LLC, attorney for respondents (Kevin B. Riordan, on the brief).

PER CURIAM

This matter returns to us after a remand to the Law Division. Aulert v. Mayor & Twp. Committee of Brick, No. A-0426-18 (App. Div. Dec. 4, 2019). Plaintiffs Peter and Marilynne Aulert and PMA Motors, Inc., t/a Robinson's Garage,[1] appeal from a January 23, 2024 order dismissing an action in lieu of prerogative writs and judgment in favor of defendants Mayor and Township Committee of Brick (the Township), denying plaintiffs' application for a license to operate a used car sales business on property zoned residential. We affirm.

## I.

We detail the following relevant facts from our previous opinion, and the court's decision. Plaintiffs' appeal stems from the denial by defendants of their 2018 application for a license to sell used motor vehicles in a residential zone. Defendants had previously granted plaintiffs motor vehicle sales licenses for twenty-eight consecutive years before denying their application in 2018, prompting plaintiffs to file a complaint seeking injunctive relief and monetary damages.

---

[1] Because Peter and Marilynne share the same surname, we refer to Peter by his first name for clarity, intending no disrespect.

The court denied plaintiffs' request for injunctive relief and granted defendants' motion to dismiss their complaint on the grounds defendants properly followed the Township ordinances in denying the license renewal, and plaintiffs had no continuing property rights in the license as it was annually renewed. Plaintiffs appealed.

On appeal, we reversed and remanded for further proceedings to develop the factual issues supporting the license application. Aulert, slip op. at 24. On May 21, 2020, the Law Division entered an order setting forth the procedure on remand. The order provided that the proceedings "shall be stayed" for ninety days and remanded to the Township for development of the factual record. The court also required a hearing "before the [T]ownship administrator or hearing officer agreed upon by the parties, or an officer designated by the [T]ownship."

The Township appointed Joanne Bergin, Township Administrator, to serve as the hearing officer. Bergin presided over the three-day hearing and issued her written findings on April 11, 2021.

At the hearing, Peter testified "he buys cars to use them to salvage for pieces for other cars to repair them to maintain them so that you have these scrapped, ruined[,] or dismantled motor vehicles on the property," which Bergin determined to be consistent with the definition of a junkyard. Because

Peter is the only mechanic on the site and there are at least seventy cars on the property at any given time, Bergin concluded the primary function of the property cannot be automotive repair.

In support of her decision, Bergin relied on testimony from Peter describing his use of the property and a Township zoning official, who testified "since becoming [a z]oning [o]fficial in 2010 he has never seen a 'for sale' sign on any vehicle [on the property]." Bergin determined "the use of the property has evolved from a repair shop as its primary use to a [junk ]yard" over time. In distinguishing between automobile repair shops and junkyards, she specified repair shops "function with the specific purpose of repairing vehicles. The repairs are made and the vehicle is released to its owner, and in some cases, sold." She noted Peter and the zoning officer agreed cars stay on the property for years to be used for parts or scraps.

She considered that plaintiffs had not had a motor vehicle sale since 2018 and had not had a showroom on the site since 2005. In turning to the legal definition of a junkyard, she noted Township Code 23703 defines junkyard as an "operation which falls within the definition . . . provided in N.J.S.A. 27:5E-3." A junkyard is defined as "an establishment or place of business which is maintained, operated, or used for storing, keeping, buying, or selling junk, or for the maintenance or operation of an automobile

graveyard." N.J.S.A. 27:5E-3(c). Automobile graveyard is defined as "any establishment or place of business which is maintained, used, or operated, for storing, keeping, buying, or selling wrecked, scrapped, ruined, or dismantled motor vehicles or motor vehicle parts." N.J.S.A. 27:5E-3(b). Bergin concluded the current use of the property as described by both the Township and plaintiffs is consistent with the N.J.S.A. 27:5E-3 definition of an automotive graveyard.

In April 2023, plaintiffs filed a pre-trial brief, arguing their due process rights were violated by Bergin's appointment as hearing officer because she "was unduly prejudiced and biased in that previously she went public with statements that [plaintiffs] maintained a [junkyard]." Plaintiffs pointed to Bergin's statement to a local newspaper in May 2018, wherein she is quoted as having said plaintiffs' property "ha[d] transitioned where it is not an auto repair shop . . . [i]t's mostly a location where cars are kept for sale, and kept for sale for junk purposes as opposed to what you would usually expect from a used car lot."

Plaintiffs requested "either the license be granted or in the alternative that [they] be permitted to do a short discovery just concerning [Bergin] as to how she got where she got because she had an opinion beforehand," and "had already taken the position with the town and with the newspapers. So if [they]

A-2006-23

had known that, [they] certainly would have objected to her being the hearing officer."

On July 20, a trial was held where the court addressed Bergin's findings. Following the trial, on January 23, 2024, the court entered an order supported by a written opinion. The court reviewed the hearing transcripts, including Peter's testimony "that of his [ninety] to [one hundred] cars . . . a good portion of them[,] are used for these parts." The court further considered the zoning officer's testimony that

> [b]ased upon visual inspections. When you go out to the property you can see a large amount of vehicles that are in disrepair that are not for sale. No for sale signs on them. They've been there for extended periods of time, not customer cars that were dropped off for repair and then be picked up any time soon. So, when you go out to the site it's pretty obvious the length of time that these vehicles have been on site.

And, reviewing the statutory definitions of "automobile graveyard," "junk," and "junkyard" under N.J.S.A. 27:5E-3, the court affirmed defendants' decision not to issue a vehicle sales license to plaintiffs, with prejudice. Plaintiffs appeal.

## II.

Municipal actions are presumed valid. First Peoples Bank v. Twp. of Medford, 126 N.J. 413, 418 (1991) (citing Quick Chek Food Stores v. Twp. of Springfield, 83 N.J. 438, 447 (1980)). "Anyone challenging an ordinance [or

resolution] as arbitrary or unreasonable bears a heavy burden."  Ibid. (citations omitted).  "The power to grant licenses connotes the power of denial for good cause, in keeping with and to subserve the declared legislative ends.  The test is whether there has been a reasonable, bona fide exercise of the discretion granted by the legislative authority, as distinguished from arbitrary action."  Librizzi v. Plunkett, 126 N.J.L. 17, 23 (Sup. Ct. 1940) (emphasis in original).

On appeal, plaintiffs contend:  the court did not address their objection to Bergin's appointment as hearing officer given the local newspaper article; the affirmance of her findings was erroneous; and the Township is estopped from denying the license after twenty-eight years of issuance.  We affirm substantially for the reasons expressed by the court in its thorough and well-reasoned opinion.  We provide the following additional comments to amplify our decision and address plaintiffs' contention the court failed to consider their objection to Bergin and that she should have been disqualified from serving as hearing officer.

Plaintiffs aver Bergin "was unduly prejudiced and biased in that previously she went public with statements that [plaintiffs] maintained a junkyard."  More particularly, plaintiffs contend Bergin's prior statement to the local newspaper, that his business "is not an auto repair shop . . . [i]t's mostly a location where cars are kept for sale, and kept for sale for junk purposes as

7

opposed to what you would usually expect from a used car lot," evidences bias. Plaintiffs further contend Bergin had previously represented the Township in settlement negotiations involving this same issue where she represented "[i]f we are able to come to an agreement on this site, it is important that any agreed-upon conditions are expected to be met without exception and that the license to be issued is subject to revocation if any of the conditions are [violated]."

Plaintiffs cite to Szoke v. Zoning Board of Adjustment of Borough of Monmouth Beach, arguing, "[i]n the context of municipal approvals, it is just as important that the record not be contaminated by '[t]he evil of apparent partiality—the perception of less than a fair shake.'" 260 N.J. Super. 341, 345 (App. Div. 1992). In Szoke, plaintiffs-landowners appealed from an order granting defendants a minor subdivision. Id. at 342. Plaintiffs challenged the Board's determination, arguing the participation of a disqualified member of the zoning board required vacatur of the zoning board's action. Ibid. We found the direct participation of the disqualified member in the zoning board meeting constituted substantive involvement in the deliberative process and "[the actions] necessarily poisoned the spirit of impartiality with which the Board's quasi-judicial proceedings must be governed." Id. at 345.

However, the facts in the present case are distinguishable from Szoke.

In Szoke, the zoning board member had disqualified himself and announced he would remove himself from considering plaintiff's application. Id. at 343. We concluded, however, the self-disqualified member "interfere[d] with those deliberations and engag[ed] in conduct which, at the very least, was capable of affecting the deliberations" by making comments throughout the proceeding we viewed seriously impacted the issue before the board. Id. at 344-45. Plaintiffs' reliance on Szoke is misplaced as the facts we relied on in Szoke do not exist here. First, Bergin did not disqualify herself and plaintiffs' primary contention is that the court did not address their disqualification argument. Second, plaintiffs have offered no support for their argument, Bergin's prior statement poisoned the spirit of impartiality required of quasi-judicial proceedings.

Our Supreme Court set forth the standard for assessing quasi-judicial decision makers' conflicts of interest in Kane Properties, LLC v. City of Hoboken, 214 N.J. 199, 221 (2013). There, the Court explained the "appearance of impropriety" test continues to apply to judicial and municipal officials acting in a quasi-judicial capacity. Id. at 220-21. The standard is whether "a reasonable, fully informed person [would] have doubts about the [official's] impartiality." Id. at 221 (quoting DeNike v. Cupo, 196 N.J. 502, 517 (2008)). Although no showing of actual prejudice is required, and "an

objectively reasonable belief that the proceedings were unfair" is sufficient. Id. at 221-222 (citations omitted) (internal quotation marks omitted).

Applying these legal principles, we reject plaintiffs' belated challenge to Bergin's appointment as hearing officer. We first note plaintiffs' challenge is untimely as it was made two-years post issuance of her findings, and three months prior to the court's July 2023 hearing.

Additionally, plaintiffs have offered no support for their claim "a reasonable, fully informed person [would] have doubts about [Bergin's] impartiality." Bergin was appointed as hearing officer to oversee the Township hearing as required by the court following our May 2019 remand order. As hearing officer, it was her role to oversee the proceedings and issue written findings consistent with the court's May 21, 2020 order. Plaintiffs do not raise any objection to the manner in which Bergin conducted the hearing, only that her prior public statements in a local newspaper show bias against them. There are, however, no facts supporting plaintiffs' contention. Moreover, we discern Bergin's statements to the newspaper in May 2018 consist of her factual observations, not legal determinations, about the condition of plaintiffs' property.

Additionally, we note Bergin's comments to the local newspaper in May 2018 were no different from plaintiffs' own testimony at the hearing regarding

the use and condition of his property. At the hearing, Peter did not deny the number of cars on his property and testified that he had not sold any cars in the past few years, stating:

> I buy a car, okay, primarily to fix it I'm a garage. I don't want to pay the going rate for. So[,] if I can get something at a deep discount because it needs to be repaired then I buy it. There are occasions when you might need an engine but let's even go further. Let's say you have a car that's got a lot of miles, it needs an engine, a transmission, tires and so on, well, the least expensive way to repair that is to find a vehicle that has those components that are good, you can start, you can run, you can listen to it because then when you buy these components from say an auto recycler you don't know if anything is any good until you actually put it together and you turn the key. So there are cars that I bought like anybody else in the business to what do you call it, take components out and once that' done the car is done—the car is gone, you get rid of it.

We are therefore not persuaded by plaintiffs' unsupported assertions Bergin should have been disqualified from serving as the hearing officer and conclude plaintiffs' claims lack merit. R. 2:11-3(e)(1)(E).

Peter's admissions at trial combined with the zoning officer's testimony about the state of plaintiffs' property are sufficient for the court to have concluded the Township is not required to renew plaintiff's motor vehicle sales license. The Township ordinance defined a junkyard as "an establishment or place of business which is maintained, operated, or used for storing, keeping,

A-2006-23

buying, or selling junk, or for the maintenance or operation of an automobile graveyard." N.J.S.A. 27:5E-3(c).

Further, Bergin's service as a Township official and her prior efforts to resolve plaintiffs' renewal application during settlement negotiations is insufficient to warrant her disqualification. "An appearance of impropriety must be 'something more than a fanciful possibility' and 'must have some reasonable basis.'" Kane, 214 N.J. at 222 (quoting Higgins v. Advisory Comm. on Pro. Ethics of Sup. Ct., 73 N.J. 123, 129 (1977)). Moreover, as the record shows, plaintiffs received a fair hearing, and Bergin's findings were submitted to the court as required by the remand order.

To the extent we have not specifically addressed any remaining issue raised by plaintiffs, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12                                                    A-2006-23